FREDERICK SCHADE, SR., AND FREDERICK, SCHADE, JR.,
   PLAINTIFFS IN ERROR, V. MARIA W. BESSINGER,
   DEFENDANT IN ERROR.

**Evidence:** PROVING DEED A MORTGAGE. To vary the legal import of an
   absolute deed, especially when fraud, accident, mistake, or surprise, is
   not alleged, the evidence in reference to the understanding and intention
   óf the parties, at the time of the execution of the writing, must be clear,
   certain, and conclusive, before a court of equity will determine such deed
   to be a mortgage security only.

———: ESTOPPEL BY DEED. Where a party voluntarily surrenders the
   legal evidence by which his claim could be supported, and directs his
   grantor to make a deed to another person, he is estopped from introduc-
   ing secondary evidence to defeat a title made with his own knowledge
   and consent, and for which he received satisfactory consideration.

THIS was an action of ejectment brought by Maria M.
Bessinger; against Frederick Schade, Sr., and Frederick
Schade, Jr., for the recovery of the possession of a certain
tract of land in Richardson county.

The facts in the case are substantially as follows:

Frederick Schade, Sr., a native of Germany, emigrated
to the United States, and in the year 1864 married Maria
M. Bessinger. Shortly after the marriage she advanced
the sum of two hundred dollars, and Schade, Sr., bought
of one Theodore Hoos the tract of land in controversy,
paying therefor the sum of five hundred dollars. After
the purchase, both parties, as husband and wife, moved on
the premises, erected a house, made some improvements,
and lived together thereon until 1868. Shortly after the
purchase, Schade, Sr., to whom the deed from Hoos had
been made, erased therefrom his own christian name, and
inserted in its place that of his wife Maria. Schade, Jr.,
coming from Germany, Maria for the first time, learned
that Schade, Sr. had a wife and children then living
in Germany. She continued, however, for some time
thereafter, to live with Schade, Sr., performing the

labor and duties she had done before, and the deed made as above stated was destroyed, (never having been recorded), and Hoos made another to the plaintiff as Maria M. Bessinger. In 1868 she abandoned Schade, Sr., and at the commencement of this action in 1870, was living separate and apart from him. In the meantime Schade, Sr. conveyed the land to Schade, Jr., and they together continued in possession of the premises.

The cause was tried at the November term, 1871, before Mr. Chief Justice Mason, sitting in the district court of Richardson county, and judgment rendered in favor of the plaintiff, which on motion of defendants was set aside and a new trial granted. At the second trial in June, 1872, the court again found the issues to be in favor of the plaintiff, and rendered judgment accordingly. On motion of defendants this finding and judgment was set aside and another trial granted. The third trial took place in November, 1872, and the court again rendered judgment in favor of the plaintiff. The defendants filed a motion for a new trial, which was overruled by the court. To reverse this finding and judgment the Schades, who were defendants in the court below, brought the cause here upon petition in error. Considerable testimony was taken before a referee in the court below, the important portion of which is referred to in the opinion of the court.

*A. Schoenheit*, for plaintiffs in error, submitted the following points:

I. Was the changing of the first deed *a void act?* or, in other words, did the deed, as changed, and afterwards destroyed, and the making of the other deed, divest the plaintiff in error, Schade, Sr., of the estate, and vest in the defendant in error, Maria M. Bessinger, the legal title and estate of said premises?

We contend that the changing of the first deed did not, nor its destruction, nor the making, etc., of the second deed invest the defendant in error with the legal title; nor did any or all of said acts divest Schade, Sr. of the legal estate in and to said premises. 2 *Washburn Real Property*, § 12, 557, and authorities there cited. *Rifener v. Bowman*, 53 *Penn. State*, 313. *Lewis v. Payn*, 8 *Cowen*, 71. *Hatch v. Hatch*, 9 *Mass.*, 307. *Chessman v. Whittemore*, 23 *Pick.*, 231.

II. Is the instrument under which the defendant in error claims, a deed or a mortgage?

Burchard, in substance, testifies that Schade, Sr., at the time said witness wrote the deed, said that he, Schade, Sr., "wished to secure Mrs. Bessinger for the money he had borrowed of her, and her work; but, that for the purpose of preventing the children of Schade, Sr., from contesting the matter, the deed was made absolute in its terms." The testimony of Mary Beimly, Charles Beimly, the defendant in error herself, and Charles Walther is in substance the same. These are all the witnesses in behalf of the defendant in error upon that point.

Schade, Sr., states the deed, etc., was made for the purpose of securing the payment of money loaned by the defendant in error to said Schade, Sr., with interest, etc., and that she was to re-convey the premises to him as soon as she was paid. Schade, Jr., states that she acknowledged that fact to him.

*William McLennan*, for defendant in error, contended:

I. The defendant in error has clearly established by the proof, that the property was purchased and conveyed to her as a settlement upon her after the marriage; that she gave Schade, Sr., a portion of the money, and that no understanding, agreement, or arrangement of any kind

was made, by which the property was to be conveyed to these plaintiffs in error, or any of them, on any terms whatever.

II.   Schade, Sr., procured a marriage with the defendant in error, by his false and fraudulent representations to her, and the property was purchased, as he stated, for a home for her.   She exercised all acts of ownership over the property from the time of the conveyance to her, up to the time of the commencement of this action, by improving the land, paying the taxes, etc., and there is no testimony showing his dissent of the same.   Nor is there any testimony, except that of Schade, Sr. and Schade, Jr., showing the slightest grounds for claiming that she was to hold the property in trust for any purpose whatever.   Slight as such testimony is, it is clearly and emphatically contradicted by testimony of the defendant in error, and a number of disinterested witnesses.

III.   The marriage of the defendant to the plaintiff, Schade, Sr., was a sufficient consideration for said conveyance, and it will not change the consideration, although the marriage afterwards appears to have been a nullity, it being brought about by the false and fraudulent representations of the Schade, Sr.   2 *Parsons on Contracts*, 71.   *Waters v. Howard*, 8 *Gill*, 262.

IV.   The law will not presume that the deed to Maria M. Bessinger was given as a mortgage, or made to her in trust, but such fact must be clearly established, and the onus is on the party making the allegations to prove them.

V.   Trusts are not to be presumed, when the papers on their face are absolute, and if the property was a gift from F. Schade, Sr., to the defendant in error, her title to the property is complete against all persons, except

creditors of said F. Schade, Sr., who were creditors at the time the conveyance was made.

VI.   The creditors named in said answer were subsequent creditors, and have no equity as against said defendant in error, and were they creditors who had an equity, their rights cannot be investigated until they commence their action for that purpose, and then only to the extent of their debts and no more.   *Parson on Contracts*, 120– 122.   *Gower v. Mainworing*, 2 *Vesey, Sen.*, 89.   *Cole v. Wade*, 16 *Vesey, Jr.*, 43.   *Packard v. Nye*, 2 *Met.*, 47.   *Green v. Winter*, 1 *Johns. Ch.*, 26.   *Manning v. Manning*, 1 *Johns. Ch.*, 527.   *Schieffelin v. Stewart*, 1 *Johns. Ch.*, 620.   *Stone v. Hackett*, 12 *Gray*, 227.

GANTT, J.

THIS is an action in ejectment, and the plaintiffs in error, who were defendants in the district court, rested their defense, mainly, on these two grounds : *First*, that the deed from T. Hoos to the defendant, although a conveyance absolute, yet it was intended to be and was a mortgage security only; and, *Second*, That Schade, Sr., was the purchaser and owner of the land, the first deed being made to him as grantee, and therefore the second conveyance by Hoos to defendant in error, did not divest him of the legal estate in the premises.

But upon an examination of the evidence stated in the bill of exceptions, I think it fails to sustain either the first or second defense; and this is the unanimous opinion of this court.   The testimony of N. W. Burchardt, C. F. Walther, and T. Hoos, who are wholly disinterested witnesses, clearly shows that Schade, Sr., originally purchased the land in controversy for the defendant in error, as a consideration for money she furnished and labor and services she performed for him.   C. F. Walther further

testified that he wrote the deed in which the name of Frederick Schade was inserted as grantee, and, that a short time afterwards, he came to him and told him the deed was to be made to the defendant in error, and that then, by consent of the parties, the name of Frederick Schade was erased from the deed, and the name of Maria M. was put in the place of it as grantee. N. W. Burchardt further testifies that Schade told him he "wanted to give her the land to be her own in fee simple without condition," and that he requested him to write a deed from T. Hoos to Maria M., which was written at his request, and was executed by Hoos and delivered to her; and that the first deed, not being recorded, was by the consent and understanding of all parties, cancelled and thrown aside. It seems quite certain that Schade, Sr., when he contracted for the purchase of the land, and afterwards, intended that it should be conveyed to the defendant in error in fee simple without condition whatever, and this intention is manifested both by his acts and declarations.

But it is urged that upon the cancellation of the first deed, the second one was executed to the defendant in error as a mortgage security only. It is true, under the rule of law, now well established, that a formal conveyance may be shown to be a mortgage by extrinsic evidence. And this rule seems to be founded on the principle, that, in such case, the proof raises an equity which does not contradict the writing or affect its validity, but simply varies its import so far as to show the true intention and object of the parties without a written defeasance, and establish the trust purpose for which the deed was executed. But to thus vary the legal import of such deed absolute, and especially when fraud, accident, mistake or surprise, is not alleged, the evidence in reference to the understanding and intention of the parties, at the time of the execution of the writing, must be clear,

10

certain and conclusive, before a court of chancery will determine such writing to be a mortgage security only. *Stevens v. Cooper*, 1 *John Ch.*, 429. In the case under consideration, the proof falls far short of showing that the writing was intended as a mortgage, but on the contrary the evidence manifestly shows, that the intention and purpose of Schade was to vest in the defendant in error an absolute legal estate and interest in and to the premises.

Again, it was urged by counsel that the cancellation of the first deed to Schade as grantee, and the execution and delivery of the second one by Hoos to the defendant in error, did not, in law, divest him of the legal estate in the premises. I think this is not the law of this case. We find as exceptions to the general rule of law on this subject, that an unrecorded deed of land voluntarily given up, and cancelled by the parties with intent to re-invest the estate in the grantor, will, as between the parties and all subsequent claimants under them, operate as a re-conveyance, and revest the estate in the grantor. *Tomson v. Ward*, 1 *N. H.*, 9. And in *Commonwealth v. Dudley*, 10 *Mass.*, 403, it is said that " where A, being seized and possessed of land purchased by him of B, by a deed duly executed but not recorded, contracted to sell the land to C, and for that purpose cancelled B's deed, who at A's request made a new conveyance to C., it was holden that C's title was valid notwithstanding A. continued in the occupancy of the land jointly with C. after the last conveyance."

Such conveyance operates an an estoppel arising from the voluntary surrender of the legal evidence by which alone the estate could be supported; and a conveyance to a third person, makes a good title to the latter by operation of law. *Trull v. Skinner*, 17 *Pick.*, 215. *Nason v. Grant*, 21 *Maine*, 160; and the grantee, by his voluntary act, having put it out of his power to produce the

deed, in law will not be permitted to introduce secondary evidence in violation of his understanding, and thereby defeat the fair intention of the parties. *Mussey v. Holt,* 4 *Foster,* 252. .

Frederick Schade, having voluntarily surrendered the legal evidence by which his claim could be supported, and having directed a deed to be made to the defendant in error for the premises, is estopped from introducing secondary evidence in violation of his undertaking; it would be fraudulent in him to attempt to defeat a title made with his knowledge and concurrence, and for which, as it appears, he received a satisfactory consideration. The other justices concurring, the judgment must be affirmed.

JUDGMENT AFFIRMED.