IRWIN STALL, APPELLEE, v. CLAUDIUS JONES ET AL., APPELLANTS.

FILED MARCH 18, 1896. No. 6282.

1. Mortgages in Form of Absolute Deeds: EVIDENCE: REVIEW. While a preponderance of the evidence is sufficient to establish an issue in any civil action, and while this court will not, in the exercise of its appellate jurisdiction, weigh conflicting evidence, still, in order to sustain a finding for the plaintiff in an action to have a deed absolute in form declared a mortgage, the evidence on behalf of plaintiff, when taken together, and without regard to the contradicting evidence, should present a state of facts consonant with reason and consistent in its different parts.

2. Statute of Limitations: DEEDS AS MORTGAGES. The statute of limitations runs against a bill to declare a deed absolute in form a mortgage, in favor of a grantee in possession, from the time such possession becomes adverse to the grantor's title.

3. Adverse Possession: EVIDENCE. That grantee's possession is adverse may be inferred from the exercise by nim of acts of ownership after payment of the debt.

4. Deeds as Mortgages: TITLE. In this state a deed absolute in form passes the legal title, although intended as security for a debt, and for most purposes treated as a mortgage.

5. ———: FORECLOSURE: SETTLEMENT. Therefore, where the grantee under such a deed is in possession, the grantor's equity of redemption may be defeated by a parol settlement defeating his right to an accounting.

APPEAL from the district court of Seward county.   Heard below before WHEELER, J.

The facts are stated in the opinion.

*Reese & Gilkeson* and *D. C. McKillip*, for appellants:

More than the mere preponderance of evidence is necessary to establish the claim that a deed absolute on its face is a mortgage. (*Cadman v. Peter*, 6 Sup. Ct. Rep. [U. S.], 957; *Tilden v. Streeter*, 8 N. W. Rep. [Mich.], 502; *Howland v. Blake*, 97 U. S., 624; *Woodworth v. Carman*, 43 Ia., 504; *Walker v. Farmers Bank*, 14 Atl. Rep. [Del.], 819; *Satterfield v. Malone*, 35 Fed. Rep., 451; *Lance's Appeal*, 4 Atl. Rep. [Pa.], 375; *Maher v. Farwell*, 97 Ill., 56; *Pancake v. Cauffman*, 7 Atl. Rep. [Pa.], 67; *Luver v. Lyons*, 40 Ia., 510; *Butler v. Butler*, 1 N. W. Rep. [Wis.], 70; *Schade v. Bessinger*, 3 Neb., 144; *Deroin v. Jennings*, 4 Neb., 97; *Ford v. Joyce*, 78 N. Y., 618; *Boardman v. Davidson*, 7 Abb. Pr., n. s. [N. Y.], 439; *Jasper v. Hazen*, 58 N. W. Rep. [N. Dak.], 457.)

The action is barred. (*Morrow v. Jones*, 41 Neb., 867; *Borden v. Clow*, 30 Pac. Rep. [Nev.], 821; *Fisk v. Stewart*, 26 Minn., 372; *Rogers v. Benton*, 38 N. W. Rep. [Minn.], 768.)

Reference was also made to the following cases: *Knowles v. Knowles*, 86 Ill., 6; *Kent v. Lasley*, 24 Wis., 654; *Moreland v. Barnhart*, 44 Tex., 275; *Glisson v. Hill*, 2 Jones Eq. [N. Car.], 256; *Todd v. Campbell*, 32 Pa. St., 250; *Sloan v. Becker*, 26 N. W. Rep. [Minn.], 730; *Cooper v. Skeel*, 14 Ia., 578; *Noel v. Noel*, 1 Ia., 423.

*Pound & Burr, R. P. Anderson, George H. Terwilliger,* and *Thomas A. Healey, contra.*

References to question as to the quantity of proof required: *Southard v. Curley,* 134 N. Y., 148; *Newman v. Edwards,* 22 Neb., 248; *Price v. Karnes,* 59 Ill., 276; *Littlewort v. Davis,* 50 Miss., 403; *Darst v. Murphy,* 119 Ill., 343; *Perdue v. Bell,* 83 Ala., 396; *Bailey v. Bailey,* 115 Ill., 551; *Gassert v. Bogk,* 7 Mont., 585; *Knapp v. Bailey,* 79 Me., 195; *Cosby v. Buchanan,* 81 Ala., 574; *McMillan v. Bissell,* 63 Mich., 66; *Wylie v. Charlton,* 43 Neb., 840; *Hoyt v. Schuyler,* 19 Neb., 652; *Snowden v. Tyler,* 21 Neb., 199; *Bowman v. Griffith,* 35 Neb., 361.

References to question as to statute of limitations: *Newman v. Edwards,* 22 Neb., 248; *Lebley v. Farmers Loan & Trust Co.,* 139 N. Y., 461; *Paschall v. Hinderer,* 28 O. St., 568; *Woodworth v. Carman,* 43 Ia., 504; *Odenbaugh v. Bradford,* 67 Pa. St., 96; *Darst v. Murphy,* 119 Ill., 343.

The following cases were also cited: *Worthington v. Worthington,* 32 Neb., 338; *Morse v. Raben,* 27 Neb., 145; *Newman v. Edwards,* 22 Neb., 248; *Douglas v. Moody,* 80 Ala., 61; *Russell v. Southard,* 12 How. [U. S.], 139; *Howe v. Powell,* 40 La. Ann., 309.

IRVINE, C.

In December, 1875, Stall conveyed to Jones the northwest quarter of section 22, township 10 north, of range 2 east, in Seward county. December 17, 1891, he instituted this action for the purpose of having the conveyance declared to have been a mortgage, for an accounting of the amount due thereon, and of the rents and profits of the land which had been in Jones' possession

ever since the conveyance.   The answer of Jones admits the conveyance, but alleges that it was in pursuance of an absolute sale of the premises, pleads laches, the statute of limitations, and adverse possession.   The district court found for the plaintiff and also made special findings, not necessary to here notice because they amounted to a general finding for plaintiff on the issues joined. The defendant Jones appeals, the other defendants not appearing to have any beneficial interest.

The case in its nature calls for a review of the evidence to ascertain whether it supports the findings of the district court;   and the appellant insists that the rule in such cases is that a mere preponderance of the evidence is not sufficient to establish the plaintiff's case;   that in order to show that a conveyance absolute in form was in legal effect a mortgage, the evidence must be free from doubt, or at least that it must be of a most clear and convincing character.   This position is supported to a certain extent by *Schade v. Bessinger*, 3 Neb., 140, and *Deroin v. Jennings*, 4 Neb., 97.   The rule stated in the latter case is that a court of equity will not declare a deed absolute in form a mortgage unless the proof is clear, consistent, and satisfactory that the object of the transaction was to create a security for the payment of money.   On the other hand, it has been held in relation to similar statements with regard to the degree of evidence required to establish the good faith of a conveyance from husband to wife, that in all civil cases only a preponderance of the evidence is necessary (*Stevens v. Carson*, 30 Neb., 544), and likewise as to the establishment of a parol gift (*Wylie v. Charlton*, 43 Neb., 840).   In the case last cited it was said that in determining

on which side the preponderance of evidence lay,
the circumstances naturally casting suspicion
upon testimony to establish a parol gift were
proper for consideration, but that such circum-
stances did not create a different rule as to the
degree of evidence required. We adhere to the
doctrine of the two later cases, that only a prepon-
derance of evidence is required to establish an
issue in civil actions; and we also adhere to the
settled doctrine of this court that it cannot in the
exercise of its appellate jurisdiction undertake to
weigh conflicting evidence, but will, where the
evidence is conflicting, refuse to set aside the find-
ing of the trial court. Still, we do not think that
this rule requires that we should in all cases sus-
tain a finding merely because a search through
the record discloses here and there isolated state-
ments of witnesses which, taken together and dis-
regarding all the rest, would sustain the finding.
It is necessary to regard the case made by the suc-
cessful party to some extent as an entirety; and
we think the rule stated in *Schade v. Bessinger* and
*Deroin v. Jennings* a correct one, not at all conflict-
ing with other cases, provided it be applied simply
so far as to require that in such cases as we are
considering the plaintiff, to prevail, must present
consistent and satisfactory evidence, which, if
believed, would be sufficient to establish his case.
If on his side such evidence is presented, the mere
fact that it is contradicted by defendant's wit-
nesses would not prevent a recovery provided the
trial court in weighing the testimony considered
the evidence on behalf of plaintiff worthy of be-
lief. But the plaintiff's proof, when taken by
itself, ought to be reasonable and consistent with
known facts. In the case before us it is possible

to accept a portion of the plaintiff's testimony, and a portion of defendant's, and thus gain sufficient to support the findings; but in order to do so it is necessary to believe the plaintiff in some points where he is contradicted by several witnesses, by his own conduct, and by the circumstances, and then to follow this by absolutely disbelieving and rejecting other portions of his testimony and accepting on these points testimony of the defendant contradicted by the plaintiff. A complete review of the 400 pages of evidence is impracticable and it would be unprofitable. We shall content ourselves by an attempt to summarize its most important features.

The plaintiff's testimony is that he bought the land in question in 1874. It was incumbered by a mortgage in favor of R. E. Moore, for $500, bearing twelve per cent interest, and due in May, 1876. Stall became indebted to Jones to an amount of $80 or over, and in the autumn of 1875, an execution having been issued on a judgment against him in favor of a third person, he made arrangements with Jones by which Jones agreed to advance him other money so as to make his indebtedness $520. To secure this Stall executed the deed in question, being in form an absolute conveyance of the premises. Jones, on his part, according to Stall's testimony, agreed to discharge Moore's mortgage when it became due and to carry the debt at ten per cent. It is beyond dispute that an indebtedness of $520 was created from Stall to Jones at about this time, and that Stall paid this from time to time so that it was entirely discharged in March, 1878. Jones was let into possession on the execution of the deed, and has ever since occupied the land by his ten-

ants.   When Moore's mortgage came due he
paid it.   Stall also testifies that in 1877 he found
a purchaser for the land at $1,200, and consulted
Jones in regard to its sale; but Jones advised him
not to sell, saying that he, Jones, would take care
of it and that Stall could realize more than he was
then offered.   Stall also testifies to a recognition
by Jones in September, 1882, of Stall's ownership;
but, even according to Stall's testimony, this was
somewhat equivocal.   It was to the effect that
Stall met Jones in Seward, and "told him we had
better make a sale of the land, as I would like to
get a little money out of it, and he told me no, to
let the land go till after election, then he told me
it was all right, that I could do without the money
and after election he would make it all right."
There is no distinct evidence of any further trans-
actions until 1889, when Stall testifies that he
demanded a reconveyance and Jones wrote him a
check for $20, which he handed to him and said
that was all he could do, and then rushed out.   In
cross-examination Stall says that he understood
from what Jones said that that transaction ended
the business.   Stall took the check and used its
proceeds.   In 1890, according to Stall, he again
besought Jones for a settlement, and Jones said
the affair was too old to open up.   To a certain
extent Stall is corroborated by his wife in regard
to the purpose of executing the deed; and he is in
part corroborated by another witness in regard to
the transaction of 1882.   Jones squarely contra-
dicts him in regard to all the essential features of
the case.   He says the $520 loan was secured by
chattel mortgage; and Stall admits that one or
more chattel mortgages were executed to secure
it.   It may be stated that it appears quite clearly

that these mortgages were in themselves sufficient security. It is undisputed that Jones has made improvements on the land to the amount of at least $3,000, although Stall swears that he had no knowledge that such improvements were made until shortly before the action was begun. The testimony of strangers is almost altogether corroborative of Jones.

If the case rested entirely upon the proof in respect to the original character of the transaction, without regard to the other circumstances, the findings might be sustained; but taking the plaintiff's own testimony concerning the whole course of the transaction, it is far from satisfactory. According to the plaintiff the land was worth $1,600 at the time of the conveyance. The incumbrance, including the Moore mortgage, was but a little over $1,000. By March, 1878, Stall, by direct payments, had discharged the $520 indebtedness. This left only to be met the debt created on account of the Moore mortgage, of $500 and interest. Stall testifies that during nearly the whole period the rental value of the land has been from $300 to $400 per annum. It is of course possible, but it is very highly improbable, that Stall, who is incidentally shown to have been in financial difficulties during at least a portion of this period, should have permitted Jones to remain in possession and in perception of the profits of this land for sixteen years before bringing suit, for thirteen years after the original indebtedness had been paid, and for at least ten years after the profits of the land should have discharged the Moore indebtedness. This delay cannot be accounted for by any recognition by Jones of Stall's rights, because, according to Stall himself, Jones

was on each occasion guarded and equivocal, and the language which he used could not have been such as to lull Stall into a sense of security. On the contrary, if the events occurred as Stall describes them, Jones' conduct would rather have caused uneasiness and doubt as to his good faith. The evidence shows that Stall lived about five miles from the land, and it is equally improbable that if he thought he had any interest therein he should have been all those years in ignorance of the fact that Jones was making valuable and extensive improvements thereon. In this investigation we disregard much testimony in regard to statements of Stall disavowing interest in the land, because Stall denies having made such statements; but we cannot disregard the fact that in 1890 Stall filed two petitions against Jones in the district court, under his oath, alleging that the conveyance had been made to Jones in trust and for the convenience of Stall, and without consideration, without any reference to an indebtedness or a mortgage.

But if we could sustain the finding as to the nature of the original transaction, we would be at once met by the issue raised on the plea of the statute of limitations. In *Morrow v. Jones*, 41 Neb., 867, it was held that as a rule the right to foreclose and the right to redeem are reciprocal, and that the right to redeem is barred when the right to foreclose would be. In some cases it is held that against a mortgagee in possession the statute runs against a bill to redeem from the payment of the debt. (*Stillwell v. Hamm*, 97 Mo., 579; *Knowlton v. Walker*, 13 Wis., 264.) But it is the more general doctrine that the statute begins to run from the time the mortgagee's possession be-

comes adverse; and that this does not occur while the mortgagor's rights are admitted. (*McPherson v. Hayward*, 81 Me., 329; *Waldo v. Rice*, 14 Wis., 310; *Robinson v. Fife*, 3 O. St., 551; *Fisk v. Stewart*, 26 Minn., 365; *Miner v. Beckman*, 50 N. Y., 337; *Hubbell v. Sibley*, 50 N. Y., 468.) Applying this rule to the present case, it is true it does not appear from the plaintiff's testimony that Jones expressly denied plaintiff's title prior to 1890; but if we are to believe plaintiff in regard to the rental value of the land, the whole indebtedness must have been discharged more than ten years before suit brought. During this period Jones continued to lease the land, to make improvements thereon, and generally treat it as his own. There was certainly enough to justify a finding that his possession had become adverse, although we do not say that the evidence compelled such finding. In order, however, to account in any reasonable manner for Jones' continued possession in subordination to Stall's rights, we must accept Stall's improbable testimony as to the facts surrounding the original transaction, and then disbelieve his testimony as to rental value of the property.

Finally, if we pursue the course indicated, we are confronted with the transaction of 1889, when Stall says Jones gave him a check for $20 and told him that was all he would do, and Stall accepted the check and used its proceeds, understanding that Jones tendered it as a final settlement of the transaction. In the case of an ordinary mortgage, which under our law creates a lien and passes no title, it is reasonably clear that a right to redeem could not be barred by a transaction of this character lying entirely in parol; but in this state a deed absolute in form, although intended

as security, and in general treated as a mortgage, passes the legal title to the mortgagee. (*Gallagher v. Giddings*, 33 Neb., 222; *Harrington v. Birdsall*, 38 Neb., 176.) Where the legal title has passed, where the mortgagee is in possession, and where an arrangement is entered into which defeats the mortgagor's right to an accounting, we see no reason why it should not bar a redemption. Where a deed absolute in form is executed and a written defeasance or bond for reconveyance is given back, and the mortgagor voluntarily surrenders or cancels the defeasance or bond, this renders the conveyance absolute and vests complete title in the mortgagee. (*Trull v. Skinner*, 17 Pick. [Mass.], 213; *Harrison v. Trustees of Phillips Academy*, 12 Mass., 456; *Shubert v. Stanley*, 52 Ind., 46.) So where an absolute deed is given as security for the payment of money, the grantor may abandon the payment of the debt, cancel the secret agreement, and treat his conveyance as absolute; and if he do so, he will be bound by his election. (*Carpenter v. Carpenter*, 70 Ill., 457.) The Massachusetts cases go upon the ground that the mortgagor, by voluntarily destroying the evidence which would constitute the conveyance a mortgage, estops himself from thereafter claiming that it was a mortgage. So here, if Stall, knowing that the check was tendered him as a complete and final settlement of the account, accepted it and retained it, he bound himself by the accounting so had, and is without standing to maintain this bill for an accounting and redemption, because the accounting is essential to the redemption. It is true that Stall's account of the last transaction is contradicted by Jones and by other witnesses, who testify that it related to an entirely different

matter; but we repeat that we cannot zig-zag through the record, accept Stall's testimony on some points and entirely discredit it on others, believing the witnesses who contradict him, and so reach a conclusion that there was satisfactory evidence in support of the decree.

We hold that the findings are not supported by the evidence, not because we have weighed the conflicting evidence and believe that the trial court wrongfully passed upon the conflict, but because Stall's testimony and that offered in support thereof, when taken alone, does not present a consistent and reasonable state of facts entitling him to relief. We are not bound to accept isolated statements of witnesses as sufficient to make out a case, when they are inconsistent with one another, and not reasonably reconcilable with known and established facts.

REVERSED AND DISMISSED.