DAVID A. MINICK, APPELLANT, v. SAMUEL A. REICHENBACH
ET AL., APPELLEES.

FILED JANUARY 29, 1915.    No. 17,916.

1. **Limitation of Actions:** SUIT TO DECLARE DEED A MORTGAGE. "The
   statute of limitations runs against a bill to declare a deed absolute
   in form a mortgage, in favor of a grantee in possession, from the
   time such possession becomes adverse to the grantor's title." *Stall
   v. Jones*, 47 Neb. 706.

2. **Adverse Possession:** INFERENCE FROM ACTS OF OWNERSHIP. "That
   grantee's possession is adverse may be inferred from the exercise
   by him of acts of ownership after payment of the debt." *Stall v.
   Jones*, 47 Neb. 706.

3. **Deed as Mortgage:** TITLE. "In this state a deed absolute in form
   passes the legal title, although intended as security for a debt,
   and for most purposes treated as a mortgage." *Stall v. Jones*,
   47 Neb. 706.

4. ———: EQUITY OF REDEMPTION: FORFEITURE. "Therefore, where
   the grantee under such a deed is in possession, the grantor's equity
   of redemption may be defeated by a parol settlement defeating
   his right to an accounting." *Stall v. Jones*, 47 Neb. 706.

5. **Appeal:** AFFIRMANCE. Upon a trial *de novo* this court finds, as
   did the district court, that the plaintiff is not entitled to the relief
   prayed.

APPEAL from the district court for Butler county:
EDWARD E. GOOD, JUDGE. *Affirmed.*

*C. M. Skiles* and *R. C. Roper,* for appellant.

*L. S. Hastings* and *E. A. Coufal, contra.*

LETTON, J.

This is an action in equity to declare a conveyance in the
form of a warranty deed to be a mortgage and to be al-
lowed to redeem. The district court found generally for
defendant. Plaintiff appeals. The case seems to have been
tried on the petition and the separate answer of Samuel A.
Reichenbach, since we find no reference to the other de-
fendants in the pleadings or decree.

The allegations of the petition may be summarized as follows: That the plaintiff was in 1888 the owner of 320 acres of land in Butler county, which he occupied with his family as his homestead; that in 1893 he borrowed $4,000 from the Aetna Life Insurance Company, which was secured by a mortgage on this land; that the defendants Reichenbach are the officers and owners of the Rising City Bank, a corporation, and that in 1893 the plaintiff, in order to pay prior debts to the bank, executed notes to the sum of $4,500, and, to secure the same, gave a mortgage to Samuel A. Reichenbach, subject to the mortgage of the Aetna Life Insurance Company; that in 1895 the plaintiff was financially embarrasssed, and that at that time the bank had a number of notes due other parties against the plaintiff for collection, which the owners had ordered to be sued; that defendant urged plaintiff to convey the premises to him in order to prevent judgments being rendered and levied upon the land, and promised him that he could redeem at any time by paying the debt due the bank, and that they would reconvey the premises; that, relying upon this promise, on September 30, 1895, he conveyed the premises to Samuel A. Reichenbach by a deed absolute in form, but it was intended by both parties only as a mortgage; that the farm at that time was worth $14,000; that afterwards the plaintiff was worried because he could not redeem the farm, and on account thereof suffered a paralytic stroke on the 1st day of June, 1900, which rendered him weak-minded, unable to understand his rights, and not of sufficient mental capacity to realize the necessity of taking action to protect his title to the farm; that he continued in this condition, except at intervals, until April 2, 1906, when he suffered a second shock, and from that time to 1911 he was mentally incompetent; that not until shortly before the commencement of this suit was he in full possession of his faculties; that on February 5, 1902, defendants acknowledged that the deed was merely given as security, and offered to reconvey on the payment of the amount due them, including the first mortgage, which they had paid; that on December 11, 1911, he of-

fered to pay all money due the defendants, asked for an accounting, and demanded a reconveyance, which was refused.   He offers to pay the full amount due and demands a reconveyance.

The answer alleges that on September 30, 1895, the Aetna mortgage and interest, the $4,500 debt to the bank, and taxes paid by the defendants amounted to over $10,000; that, the land not being worth more than the indebtedness and liens, the plaintiff with his wife conveyed it to defendant; that defendant leased the land for a crop rental to plaintiff year after year until the 1st day of March, 1901, when plaintiff moved to another farm which he had purchased near-by; that between January 9 and March 29, 1899, the plaintiff claimed for the first time the right to redeem the land; that defendant then stated that he would convey the same to him if he would pay all of this indebtedness; that they agreed upon the sum of $10,369 as the amount then due, which amount was then the fair value of the land; that prior to the 29th of March, 1899, the plaintiff stated he was unable to obtain the money, whereupon defendant informed plaintiff that there must be a settlement; that plaintiff then agreed that if defendant would lend him the money to buy a smaller farm, pay for the improvements he had placed upon the farm, and deliver to him the notes, he would move off the premises on the 1st day of March, 1901; that, in pursuance to this agreement, the defendant delivered the notes, paid for a windmill wheel and chicken house left on the farm, amounting in all to $65, released the Aetna mortgage and the mortgage that had been given to him, and it was agreed that this was a full and complete settlement of any interest in the premises or right to redeem plaintiff had; that, in accordance with this agreement, the defendant loaned the plaintiff and his wife $2,235 with which to pay for the other farm; that plaintiff moved there as agreed; that defendant has been in exclusive possession ever since the settlement, claiming title, with the full knowledge of plaintiff; that he has made valuable improvements, amounting in all to about $2,000; has paid all taxes for the last 18 years; that

the land has increased in value to $35,000—all of this with the plaintiff's knowledge; and plaintiff has not asserted a right to redeem until this suit was begun. He also pleads laches, adverse possession, and the statute of limitations.

In the reply plaintiff admits that he delivered to defendant each year one-third of the crop, but alleges that this was for the purpose of keeping up the taxes and repairs, and that it was agreed that, if the share of the crop should more than pay these items, the surplus should be applied on the principal. He also alleges that he moved onto the smaller farm on account of being unable to work the large farm, and that it was agreed that thereafter defendant should continue to receive one-third of the crop and apply it upon the debts.

The pleadings have been set forth because they show, perhaps, in the most abridged and convenient form the contentions of the respective parties; and it may be said that with one or two exceptions, which will be hereafter noticed, the evidence on the part of the plaintiff and defendant support in the main the respective allegations in the pleadings. The direct conflict in these statements is reflected in the evidence as to almost every material fact in the case.

There is such a mass of testimony that the proper limits of this opinion will not allow a comparison and discussion of it. Since we have not the great aid to the ascertainment of truth afforded by seeing the witnesses and hearing them testify, we are inclined to attach great weight to the undisputed testimony as to the conduct of the respective parties with reference to the land. In the answer it is said that after defendant had paid the Aetna mortgage, and prior to the 28th day of March, 1899, plaintiff claimed for the first time the right to redeem the land; "that thereupon this defendant stated to plaintiff that he would convey said premises to him if he would *then pay to him the amount of his indebtedness* to defendant, including interest thereon, together with insurance premiums that he had paid to keep the buildings on said premises insured, and the taxes, that he (defendant) had paid on said lands, together with what he had paid to the Aetna Life Insurance

Company; that thereupon he and said plaintiff computed the amount which would be due the defendant from the plaintiff as aforesaid, and that from said computation they found and agreed upon the sum of $10,369 as the amount *that would then be due from the plaintiff to the defendant,* under the said arrangement, which amount was then the fair market value of said land." These allegations amount to an admission by defendant that, at the time of the conversation with Mr. Aldrich hereafter mentioned, there was an existing indebtedness; that the evidence of this indebtedness was still in the hands of defendant; and that plaintiff then had the right to redeem. The rights of the respective parties, therefore, must be determined by a consideration of whether there was a subsequent arrangement or contract between them whereby the Minicks surrendered this right. This must be determined from the evidence and the conduct of the parties with reference to the land. Several years after the deed was executed, and at a time the date of which is in dispute, Mr. Minick asked Mr. Aldrich, a lawyer of David City, to make a loan upon this land and to see if it could be redeemed. Aldrich consulted defendants, and defendants offered to reconvey the land if the indebtedness was paid. This is evidently the basis of the admission in the answer. Mr. Aldrich was unable to make or procure the loan. Defendant testifies that shortly afterwards he requested Mr. and Mrs. Minick to come to the bank; that they came, and a conversation was had in which defendant stated that he wanted the matter settled as to whether Minick claimed any rights in the premises, and that a settlement was had whereby Minick orally renounced all claim to the land and right to redeem, and Reichenbach (as he claims) delivered the notes, and agreed to furnish him the money with which to buy another and smaller farm.

On March 6, 1900, plaintiff made a contract to purchase the Carter farm of 160 acres. He paid $100 down, agreed to pay $500 on May 1, 1900, and $3,100 on or before March 1, 1901; and possession was to be given at that time. Defendant furnished the money for the last payment and took

a second mortgage on the place (which had a prior mortgage upon it of $1,800) as security. The payment was made, and Minick moved to the Carter place on the 1st of March, 1901. Before he moved he demanded and received payment for a chicken house and a windmill wheel which he had placed upon the farm after the deed to Reichenbach was made, saying that, unless he was paid for them, he would remove them to his new farm. Plaintiff insists that the conversation and agreement with Mr. Aldrich to allow redemption did not occur until 1902. To show this, he testifies that he went to see Mr. Aldrich about a claim made against him by a hired man which was not asserted until 1902, and he produced a letter of that year in which the claim of an employee for an amount said to be due him for services was made. Mr. Aldrich testified that he visited the land in 1899 or 1900, while he was undertaking to procure the loan, and that Mr. Minick was living upon it at the time, and also says that it was at a time when he had gone to look at some black cattle near Rising City. If he went while Minick was on the farm, his testimony corroborates that of defendant as to the year in which the alleged settlement occurred; but, if it was when he went to look at the cattle, it was probably some time in 1901. The evidence for the defendant as to the agreement that plaintiff should give up the right to redeem, in consideration of the cancelation of his indebtedness and the new loan with which to buy the Carter farm, is most consistent with all the circumstances; and we believe that this and the Aldrich interview occurred some time in the fall of 1900, and while plaintiff was still on the farm. From that time until December, 1911, plaintiff never set foot upon this land. Although there is both oral and documentary evidence to show that he had hundreds of transactions with the bank during this interval of time, borrowing money in order to carry on his stock feeding and shipping operations, paying and renewing notes, keeping a bank account there and drawing numerous checks, he says himself he never requested a statement as to the receipts or disbursements of money from the farm. He never inquired

whether the taxes were being paid, or whether anything was being applied upon the debt, as he asserts it was agreed should be done. He knew that the defendant was making lasting improvements, such as building corn cribs and granary, repairing, repainting and reshingling the house, barn, etc.; but he seemed to have lost all interest in the farm.

With respect to the plea of weakness of mind on the part of the plaintiff as constituting a disability which would toll the running of the statute of limitations, it appears that he suffered a stroke of paralysis on June 1, 1900; but its effect, so far as beclouding his intellect, passed away to a great extent in a comparatively short time. Until the time this suit was begun, except for a short time in 1906 when he suffered another and a less severe attack of the same disease, he was able to conduct and direct, not only ordinary farming operations, but the purchasing and feeding of cattle, their shipment to South Omaha to market (himself often accompanying and selling them upon the market ) and the disposition of the proceeds. It is also shown that in the same interval he successfully conducted the Carter farm and practically paid off the whole purchase price, with no one to help him except his wife and a hired man. The large number of checks upon and notes given to the defendants' bank show that the business he conducted was in excess of that of the ordinary farmer. The oral waiving of the right to redeem was in the fall of 1900, as we view the evidence, after plaintiff had recovered in great measure from the effects of the stroke of June 1, and at a time when he was competent to transact and was transacting his own business. Ten full years intervened during which he was fully competent to act and during which he remained silent. During the later years of the period an unprecedented rise in the value of land took place, and after this had occurred he took action. It seems to us that his conduct during and after this long period of time is most persuasive in determining the character of his relation to the land. Actions often speak louder than words.

More than ten years' possession, accompanied by acts of exclusive ownership, such as the erection of buildings and making other valuable improvements upon the land, of which plaintiff was aware, without consulting him or requesting his consent, the retention of the entire proceeds of the farm, without offering to account, and other acts inconsistent with any admission of title in the plaintiff, should have been enough to apprise him that the defendant claimed and was asserting the exclusive title. His own acts also in diverting the earnings and profits of the Carter farm to other purposes than the attempt to redeem seems inconsistent with his testimony. Moreover, aside from the plea of the statute of limitations, we are convinced that Minick parted with all right to redeem soon after the Aldrich incident. His conduct shows it; and hence, even if ten full years have not intervened, he still must be denied the relief he seeks upon the facts.

Reichenbach was in possession of the land at the time of the settlement, by Minick as tenant, and he has continued in possession until this day. Under the authority of *Stall v. Jones*, 47 Neb. 706, the right to an accounting was parted with when the oral setlement was made, and Minick had no further interest in the land. We have come to these conclusions as to the weight of evidence more by a consideration of the actions of both parties than upon their spoken words.

We believe the judgment of the district court warranted by the proofs, and it is therefore

AFFIRMED.

MORRISSEY, C. J., SEDGWICK and HAMER, JJ., not sitting.