## JACOB D. ZITTLE v. SAMUEL SCHLESINGER.

FILED JANUARY 21, 1896.    No. 5919.

1. **Trial:** NONSUIT: PRACTICE.    Under our code a trial court has no authority to enter an involuntary nonsuit and judgment of dismissal, because the plaintiff fails by his evidence to establish his cause of action.    In such case the proper practice is to instruct the jury to return a verdict for the defendant.

2. ———: ———: HARMLESS ERROR.    But a judgment so entered will not be reversed by this court where, on the evidence, the defendant was entitled to have a verdict directed.    In that case the error is without prejudice.

3. **Real Estate Agents:** COMMISSIONS: FRAUD.    While a real estate broker is usually entitled to his commissions when he has produced one ready, willing, and able to purchase on the terms proposed by the principal, or when he has produced one with whom a contract of sale is actually made, still, if the person produced is able to purchase only by resort to an unlawful device, the broker has not earned his commission.

4. ———: ———: VENDOR AND VENDEE: FRAUD.    Where, under such circumstances, an executory contract of sale has been entered into between the principal and the proposed purchaser, the principal being aware that its execution involves the perpetration of a fraud upon a third person and refusing to consummate the contract, the broker is not entitled to his commission.

ERROR from the district court of Douglas county.    Tried below before DAVIS, J.

The opinion contains a statement of the case.

*Slabaugh & Rush,* for plaintiff in error:

After the introduction of the evidence by plaintiff, the court has no authority to dismiss the case and discharge the jury without a verdict. (*Dolby v. Tingley,* 9 Neb., 417; *Smith v. Sioux City & P. R. Co.,* 15 Neb., 583; *Chicago, B. & Q. R. Co. v. Richardson,* 28 Neb., 118; *Byrd v. Blessing,* 11 O. St., 362.)

Plaintiff cannot be nonsuited after testimony has been introduced by defendant. (*Lyon v. Sibley,* 32 Me., 576; *Emerson v. Joy,* 34 Me., 347 ; *Rose v. Learned,* 14 Mass., 154.) ·

If fraud appears, it is on part of defendant and he cannot take advantage of his own wrong. (*Phelps v. Prusch,* 83 Cal., 626; *Blaydes v. Adams,* 35 Mo. App., 526; *Hannan v. Moran,* 71 Mich., 261.)

If parties to a sale attempt to do wrong it does not affect the agent who is innocent. (*Roundtree v. Smith,* 108 U. S., 269; *Patrick v. Littell,* 36 O. St., 79; *Tracy v. Talmage,* 14 N. Y., 162; *Ormes v. Dauchy,* 45 N. Y. Sup. Ct., 85.)

If parties, having been brought together by the agent, choose to execute a lawful transaction in an unlawful manner, that is a matter which rests wholly with them. (*Michael v. Bacon,* 49 Mo., 474; *Tracy v. Talmage,* 14 N. Y., 162; *Hubbard v. Moore,* 24 La. Ann., 591; *Mahood v. Tealza,* 26 La. Ann., 108.)

An agreement for an exchange was entered into in writing. The sale and purchase were agreed upon and the agent is entitled to his commission. (*Keys v. Johnson,* 68 Pa. St., 42; *Love v. Miller,* 53 Ind., 294; *Francis v. Baker,* 45 Minn., 83; *Love v. Owens,* 31 Mo. App., 501; *Rice v. Mayo,* 107 Mass., 550; *Hamlin v. Schulte,* 34 Minn., 534.)

A broker is not an insurer of title and may recover his commission though the title is defective. (*Birmingham Land & Loan Co. v. Thompson,* 86 Ala., 146; *Doty v. Miller,* 43 Barb. [N. Y.], 529.)

IRVINE, C.

This was an action by the plaintiff in error against the defendant in error to recover commissions which the plaintiff claimed he had earned as a real estate broker. When the plaintiff rested, the defendant moved for a nonsuit. This

motion was sustained by the court, and a judgment of dismissal entered, against the plaintiff's exception, without taking a verdict from the jury.' It is contended that under our code this was improper practice, and we shall examine that question before inquiring into the merits of the case.

It is broadly contended that the court has no power to subject the plaintiff to an involuntary nonsuit or to enter a judgment of dismissal on the ground that the plaintiff's evidence is insufficient to establish a cause of action. Were we without guide from the statutes, the question would upon authority be difficult of solution. The supreme court of the United States (*Elmore v. Grymes*, 1 Pet., 469) has determined that the federal courts have no power to subject the plaintiff to an involuntary nonsuit. Many of the state courts take the same view. On the other hand, in many states such a practice has been sustained as avoiding an unnecessarily circuitous procedure. (See authorities collated, 16 Am. & Eng. Ency. of Law, 733.) But the provisions of our Code of Civil Procedure, to our minds, afford a ready solution of the question. Section 430 provides: "An action may be dismissed without prejudice to a future action. First—By the plaintiff, before the final submission of the case to the jury, or to the court, where the trial is by the court. Second—By the court, where the plaintiff fails to appear on the trial. Third—By the court, for want of necessary parties. Fourth—By the court, on the application of some of the defendants where there are others whom the plaintiff fails to prosecute with diligence. Fifth—By the court, for disobedience by the plaintiff of an order concerning the proceedings in the action. In all other cases, upon the trial of the action, the decision must be upon the merits." By virtue of this section, in the five cases stated, a judgment of dismissal without prejudice may be entered by the court; and by the last sentence of the section such a judgment cannot be entered in other cases. At common law a nonsuit was not a bar to a future action, and the evi-

dent purpose of the framers of the code was to change the
law in order to lead every case to a final judgment which
should be a bar except where, for sufficient reasons, other
provision has been made.    This is the view taken elsewhere
under similar statutes. (*Byrd v. Blessing*, 11 O. St., 362;
*Case v. Hannahs*, 2 Kan., 490; *Mulhern v. Union P. R.
Co.*, 2 Wyo., 465.)   Where the evidence is insufficient to
warrant a verdict for the plaintiff the court may, and should,
instruct the jury to return a verdict for the defendant; but
it has no authority without a verdict to enter a nonsuit and
judgment of dismissal.   It does not follow, however, that
this judgment should be reversed because of this error.
Section 145 of the Code provides: "The court in every
stage of an action must disregard any error or defect in the
pleadings or proceedings which does not affect the substau-
tial rights of the adverse party; and no judgment shall be
reversed or affected by reason of such error or defect."   It
follows that if the state of the evidence was such that the
court should have directed a verdict for the defendant and
entered judgment upon that verdict, the error is without
prejudice and must be disregarded. (*Byrd v. Blessing* and
*Case v. Hannahs, supra.*)

The evidence tends to show that the plaintiff, a real es-
tate broker, had entered into a contract with one Mills to
procure for him a purchaser, either by way of sale or ex-
change, for certain property in the city of Omaha.   In the
language of real estate brokers, Mills had "listed" his
property with the plaintiffs for sale or exchange.   Some
time thereafter the defendant approached plaintiff to ascer-
tain what property plaintiff had for exchange.   He was
informed of Mills' property, and the defendant then listed
his property with the plaintiff, knowing, it was alleged,
that plaintiff was to receive a commission from Mills, and
agreeing with that knowledge to himself pay to plaintiff
one-half the usual commission.   This arrangement having
been made, the plaintiff and defendant went to examine

Mills' property. They were met by Mrs. Mills, who re-
fused to permit them to enter. Returning, they met Mills,
who was introduced to defendant by plaintiff, plaintiff in-
forming Mills where they had been, their object, and how it
had been defeated. They were then informed by Mills that
Mrs. Mills was unwilling to dispose of the property, but
that she had joined in a conveyance to one Miller, and that
a reconveyance from Miller to Mills was then held in escrow.
Mills proposed to obviate the difficulty arising from Mrs.
Mills' unwillingness to convey, by destroying the reconvey-
ance and causing Miller to convey directly to the defendant.
Subsequently a memorandum of agreement was signed by
Mills and the defendant, but defendant refused to perform it,
giving as a reason that he had taken counsel and learned the
title would not be good, and that he did not wish the prop-
erty. The record does not disclose the actual condition of
the title, except that there had been a conveyance from
Mills and wife to Miller, which it would seem from some
of the evidence was for the purpose of securing a debt;
that Miller had executed a reconveyance, and that that re-
conveyance had not been delivered, but was in possession
of one Wakefield, and held by him as security for the pay-
ment of other moneys. Under this evidence, had plaintiff
produced a purchaser willing and able to take defendant's
property? We think not. In the first place, assuming
the title to have been in Mills, Mills did not offer a valid
conveyance to defendant. It is true that the defendant was
aware of this when he entered into the written memoran-
dum. But the method proposed for making title was
plainly a device to defraud Mrs. Mills of her dower if not
also of homestead rights. The plaintiff was cognizant of
this device and of its purpose. Had the transaction been
completed, Mrs. Mills would have had her remedy against
the defendant who was also a party to the fraud; and while
the defendant can claim no relief because of his participa-
tion in such an unlawful transaction, he was not bound to

consummate it. He had a right, which he exercised, to refuse to consummate the fraud, and Mills being unable to confer upon him even the apparent title, except through such fraudulent device, he was not a purchaser able to take the property in a lawful way. He was merely one willing to purchase by unlawful means. A production of such a purchaser does not entitle the agent to his commission. The greater part of the argument on behalf of plaintiff is addressed to propositions which assume that a person willing and able to take the property had been procured. We are cited to certain cases holding that a broker may recover his commission although the title proves defective, and that the refusal of a wife to join in a conveyance is no bar to the recovery of commissions; but the defects and refusal referred to in those cases relate to the title to the principals' land, and not to such features with relation to land offered in exchange therefor. In the case of an exchange a defect in title to the land offered in exchange is as good a defense as would be proof that the purchaser produced had no means of buying except with counterfeit money. But we have taken a view very favorable to the plaintiff in assuming that title had been shown in Mills. This court has held that where a deed absolute in form is executed to secure a debt, the case is different from an ordinary mortgage, and title passes to the grantee. (*Gallagher v. Giddings,* 33 Neb., 222.) Such a conveyance had been made to Miller, and while a reconveyance had been executed, it had not been delivered, but had been placed in escrow as security for a further debt. The details of these transactions very meagerly appeared in evidence. It is unnecessary to consider where the legal title was reposed. It is sufficient that if the legal title were not outstanding there were substantial outstanding equities which Mills did not propose to divest in a regular or legal manner. The evidence was, therefore, of such a character that a verdict should have been directed

58

for the defendant, and the error in the former proceedings was not prejudicial.

JUDGMENT AFFIRMED.