FRANK E. PATTERSON, APPELLEE, v. CASPER MIKKELSON, APPELLANT.

FILED APRIL 9, 1910. No. 15,969.

1. **Contracts: Evidence.** Uncontradicted evidence, to the effect that an unusual and unreasonable contract was made, should not ordinarily be rejected, but, if the evidence upon this point is so conflicting that the truth cannot be clearly perceived, the unreasonableness or absurdity of the alleged contract may be a controlling factor in determining its existence.

2. **Vendor and Purchaser: Rescission: Evidence.** The evidence in this case examined in the opinion, and *held* insufficient to sustain the judgment of the district court.

3. ———: **Land Contracts: Strict Foreclosure.** Courts of equity will decree a strict foreclosure of land contracts only under peculiar and special circumstances. An application of that character is addressed to the sound legal discretion of the court, and should be granted where it would be inequitable to refuse it, but in doing so the court should give the party in default a reasonable time to avoid the bar of foreclosure by performing the contract.

APPEAL from the district court for Seward county: GEORGE F. CORCORAN, JUDGE. *Reversed.*

*Norval Bros.*, for appellant.

*J. J. Thomas, J. D. Purinton* and *Edwin Vail, contra.*

ROOT, J.

This action is prosecuted by the vendee in an executory contract for the sale of real estate to cancel said contract and recover money paid thereon. The plaintiff prevailed, and the defendant appeals.

The plaintiff, among other things, in substance, alleges in his petition that in October, 1907, the written contract in question was executed, and contemporaneous therewith, as a consideration and an inducement therefor, the defendant orally promised and agreed to procure for the plaintiff a lease for crop rent of an 80-acre tract

of land owned by the defendant's father "for a period of time sufficient to enable the plaintiff to make the payments provided for in said exhibit A (the written contract)." The plaintiff further avers that the defendant failed and refused to procure, and the elder Mikkelson refused to execute, said lease. The defendant admits executing the written contract, concedes that he agreed to procure a lease from his father for the plaintiff's benefit, denies that the lease was to extend beyond one year, and alleges it was procured in accordance with the agreement. The defendant alleges performance and a tender on his part, and prays for equitable relief. The reply is a general denial. The court found generally in favor of the plaintiff and entered judgment in his favor for $895.

Something is said in the briefs concerning the validity of the oral agreement, but the parties have treated the written contract as incomplete, and for the purposes of this case we shall consider the oral agreement as part of the contract between the parties.

A consideration of the evidence fails to satisfy us that the contract pleaded in the petition is established. by the proof. The sale was negotiated by a Mr. Coleman, a broker, acting for the defendant. The plaintiff testifies that before the contract was made he informed Coleman that, unless he (Patterson) could secure the use of an additional 80 acres of land owned by the defendant's father, the witness could not pay for the defendant's farm and would not agree to purchase it; that Coleman said he thought he could secure Patterson a lease for said land "as long as I wanted it if I farmed it right"; that subsequently the defendant and Patterson inspected the defendant's farm and the 80 acres owned by the defendant's father, but nothing was said at that time about the lease; that at the time the contract was signed the witness stated that, if he could not secure the use of the elder Mikkelson's land, he (Patterson) would not agree to purchase the defendant's farm. He further testifies: "So

36

they told me they would draw up the lease for one year, for this year, and next fall they would draw up a lease for the entire year, and so on, * * * and that there was no question but that I could have it as long as I wanted it if I farmed it right; and they drawed up the lease for one year." The plaintiff insists that, if he had not received assurance that he should have the use of the elder Mikkelson's 80-acre tract, he would not have entered into the written contract. J. L. Mikkelson, the defendant's father, had orally leased his 80 acres of land to his son Andrew for the succeeding year. At the time the contract in suit was signed, a contract of lease was prepared for the father's 80, granting the use thereof to the plaintiff for one year from the succeeding March, for one-third of the crops to be grown thereon during the term, and Andrew Mikkelson, for a consideration paid partly by the plaintiff and in part by the defendant, sold his interest in the wheat growing upon said land to the plaintiff. The contract was subsequently delivered to J. L. Mikkelson, and signed by him some time thereafter, but not delivered to the plaintiff.

The defendant testifies: "I told him (Patterson) he could have it (the J. L. Mikkelson tract) one year if he could buy Andy out, * * * and I told him if he farmed it good he could probably have it longer, as Andy was going to quit farming." The defendant denies making any other representation to, or contract with, the plaintiff concerning the elder Mikkelson's land. Mr. Coleman corroborates the defendant, and there is other evidence in the record to sustain him in his version of the transaction. There is also evidence tending to sustain the plaintiff's testimony, and proof of contradictory statements made by the defendant and by Mr. Coleman. The plaintiff's statement seems unreasonable to us. According to him no time was fixed within which he was to have the use of the J. L. Mikkelson land other than until the deferred payment of $7,800 should be paid, five years at least and possibly a decade. Patterson does not say that

the defendant represented that he had any authority to bind his father to make a lease for an indefinite period, and an agreement of the character testified to by the plaintiff is unusual, to say the least.

The defendant's statement that he agreed to secure the land for Patterson for a year, and that he said to the plaintiff, if the latter farmed the land well, he probably would have the use of it beyond the year, seems reasonable and more in accordance with common experience. It does not necessarily follow that the contract was not made because it is contrary to common experience. Instances of poor judgment, lack of common sense, and departures from the ordinary and usual frequently are testified to in the courts. But, where the evidence is so conflicting that the truth cannot be clearly perceived, the unreasonableness or absurdity of what is claimed to have been the conduct of the parties may be of controlling importance. *Hartley's Appeal*, 103 Pa. St. 23; *Duggers v. Van Dyck*, 37 N. J. Eq. 130. The burden is on the plaintiff to make out his case by a preponderance of the evidence. In our judgment he has failed to produce sufficient evidence to justify us in affirming the judgment of the district court.

The plaintiff has paid less than one-eighth of the purchase price of the land, has refused to complete his contract, does not ask permission to do so, and has delivered possession of the farm to the defendant. Under the circumstances we think the defendant is entitled to a decree of strict foreclosure of his contract. *Harrington v. Birdsall*, 38 Neb. 176. Since the decree was rendered in the the district court, interest has accumulated on the money paid to the defendant, upon the unpaid purchase price, and equities in the way of rents and taxes should be adjusted. All of these matters should be considered upon a retrial. Although the plaintiff has refused to perform, the parties are in a court of equity, and we think he should be given an opportunity to make deferred payments of principal and accrued interest, to give security

for the $6,800 to be represented by his note, and should have a reasonable time, not to exceed 90 days after decree, to perform.

The judgment of the district court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

REVERSED.