NORTHWESTERN STATE BANK OF HAY SPRINGS, APPELLEE,
v. DE WITT C. HANKS ET AL., APPELLANTS.

FILED JANUARY 8, 1932.   No. 28013.

*A. C. Plantz,* for appellants.

*E. D. Crites* and *F. A. Crites, contra.*

Heard before GOSS, C. J., DEAN and EBERLY, JJ., and CHASE and HASTINGS, District Judges.

CHASE, District Judge.

This is a suit in equity brought by the Northwestern State Bank of Hay Springs against DeWitt C. Hanks and Lydia J. Hanks, husband and wife, to quiet the title to the real estate described in the petition.

The plaintiff relies on an instrument in form of a warranty deed executed and delivered to it by the defendants, dated November 23, 1926. The defendants contend that in the execution of this instrument it was intended by the parties to be mere security for a debt owing from defendants to plaintiff, and is in legal effect a mortgage.

After hearing the evidence, the trial court by its decree found that, in the taking of said deed, it was intended by the parties as security for the indebtedness of the defendants to the plaintiff, together with advancements made by the plaintiff for the defendants in paying other obligations for the defendants. The court also found the amount due from the defendants to the plaintiff in order to redeem, and decreed that the defendants forthwith pay to the plaintiff the sum of $15,554.59, with interest at 10 per cent. per annum, and costs, and decreed further that, if the above payment was not made within thirty days from and after the entry of the decree, the defendants be forever barred and foreclosed of all right, title and interest and all equity of redemption in the premises and that, in case of failure to make such payments within the time limited, a writ of assistance issue to the sheriff of the county for restitution of the premises to the plaintiff.

Both parties filed motions for new trial and both motions were overruled by the court. Whereupon, the defendants prosecuted an appeal from the findings of the trial court to this court, asserting eleven separate assignments of error.

The Northwestern State Bank of Hay Springs will be termed plaintiff herein, and DeWitt C. Hanks and Lydia J. Hanks as defendants.

It appears that there was a forcible entry and detention proceeding brought by plaintiff against defendants prior to commencing this action, which was heard in this court, and is reported as *Northwestern State Bank v. Hanks,* 118 Neb. 442, and by stipulation of parties the testimony in the former case was and is, in the main, the testimony in the instant case. That case was decided upon a question not involved in this proceeding and hence the decision is in no way applicable to the issues involved herein.

The record fairly reflects the following facts: That on and prior to the 23d day of November, 1926, the defendants appeared to be suffering from considerable financial embarrassment and were indebted to the plaintiff and to various other persons; that on said date the defendants executed and delivered to the plaintiff an instrument in form a warranty deed, reciting as a consideration the sum of "One dollar and cancelation of indebtedness;" that simultaneously with the execution of this instrument the parties entered into an agreement, termed a lease, in which the plaintiff, as lessor, agreed to lease the premises to the defendants as lessees. The lease recited the consideration of one dollar and was for a period of one year, to begin on March 1, 1926, and terminating on the last day of February, 1927; that as a further consideration for the leasing of the premises the defendants agreed to pay all taxes levied against the premises for the year 1926. The lease contained a provision giving the defendants an exclusive option to buy and purchase the premises for a sum equal to the total amount of said indebtedness, which the plaintiff had assumed in accepting the warranty deed hereinbefore mentioned. The lease contained the further provision in which the lessor agreed to list the premises for resale with the Hay Springs Commercial Company upon terms to be agreed upon. In the lease the items of indebtedness which the plaintiff assumed for the defendants in the acceptance of the warranty deed, specifically stated, are as follows: Unpaid taxes for the year 1925 and prior years in the sum of $371.60, a certain judgment lien which

the plaintiff had against the defendants in the sum of $834.50, with interest at 10 per cent. per annum; the sum of $874.90, with interest in the sum of $192.25, which the plaintiff claimed against the defendants and which was involved in a suit pending between the parties at the time, an indebtedness growing out of a promissory note secured by a mortgage on the premises at the time in favor of one A. L. Johnson, which was then in foreclosure and had merged into a decree for the sum of $7,385.30, with interest at 10 per cent. from the 14th day of December, 1925.

The defendant DeWitt C. Hanks testified that the agreement between the parties in the execution of these instruments was that the deed was intended as mere security for the indebtedness which he owed the bank and other people and which the bank had paid for him, and that in accepting the deed the cashier of the bank stated to him that it was intended the same as a mortgage; and further that the plaintiff bank would give him the right to sell the land and get more money out of the place if he could; that the bank would buy his paper and hold it for awhile and give him a chance to sell the land and get something out of it. He further testified that when the bank discovered that one Abegg, the mortgagee in the mortgage which the plaintiff assumed, was foreclosing it and about to sell the premises, was when the plaintiff agreed with the defendant that they would take over his land under this arrangement, pay off the Abegg mortgage, and hold the land to secure their indebtedness and give him the option of selling it within a year, that he understood that the instrument was to be nothing more than a mortgage, and that no one representing the bank ever said anything about buying his land.

Lydia J. Hanks testified that the bank, acting through its cashier, only wanted the defendants to give it security for what the defendants owed it, and that the plaintiff bank wanted the deed only as a mortgage.

The witness Horn, who testified on behalf of the defendants and was present when the transaction involved in the

lease was consummated, testified that he heard nothing said about the purchase of the land.

It further appears without dispute that at no time during the course of these proceedings did the plaintiff tender back or deliver over to the defendants any of the defendants' notes or evidence of indebtedness which the plaintiff contends was paid in acceptance of the title under the deed. It further appears that the attorney for the defendants prepared a brokerage contract in which the defendants listed the land for sale and agreed to sell it, by which brokerage contract these defendants were then treated as the owners of the fee simple title to this land.

The witness Denman, who was cashier of the bank at the time the transaction was consummated and personally in charge of the negotiations out of which the deed and lease grow, as a witness for the plaintiff, testifies that the instrument was executed as a warranty deed because the bank wanted to avoid a foreclosure proceeding.

After careful examination of the whole record, we are convinced that a consideration of two propositions will satisfactorily dispose of the entire case: (1) Whether or not the trial court was justified, under the evidence, in finding that the warranty deed was given for the purpose of securing a loan and was in effect a mortgage; and (2) if a mere mortgage, whether or not the trial court was warranted in limiting the right of redemption of the mortgagors to a period of thirty days.

It is a well-settled and almost universally recognized doctrine that equity, in interpreting transactions between individuals and determining their rights, regards the substance and not the form. It is equally well settled that if an instrument executed by parties is intended by them as security for a debt, whatever may be its form, or whatever name the parties choose to give it, it is, in equity, a mortgage. In the case of *Flagg v. Mann*, 2 Sumn. (U. S.) 486, one of the earliest cases on this subject, this doctrine was announced by Judge Story, and it has been adopted, except in a few isolated instances, by every jurisdiction

in this country. The rule grows out of the the broad equitable principle that it regards substance and not form.

"Whenever the intention is to take a security for a subsisting debt, or for money lent and to avoid or restrict the equity of redemption, chancery, seeking to protect the debtor against the rapacity of the creditor, and to do full and equal justice between the parties, will defeat such intention, by treating the transaction as a mortgage." *Dougherty v. McColgan*, 5 Gill. & Johns. (Md.) 281.

"The particular form or words of the conveyance are unimportant; and it may be laid down as a general rule, subject to few exceptions, that whenever a conveyance, assignment, or other instrument, transferring an estate, is originally intended between the parties as a security for money, or for any other incumbrance, whether this intention appear from the same instrument or any other, it is always considered in equity as a mortgage." Story, Equity (3d ed.) sec. 1018.

This court has repeatedly held that, where two instruments are executed simultaneously, in determining the effect and intention of the parties they will be construed together. We are of opinion that the trial court was correct, in view of all the evidence and circumstances of the case, in determining that the instrument upon which the plaintiff seeks to quiet its title was intended as security for a debt, and that the grantors still retained equitable rights in the subject-matter thereof. If the decree of the court is correct as to this proposition, and we think it is, then the further question to be determined is whether or not the period of thirty days fixed by the decree for the debtor to redeem or to pay the debt and demand a reconveyance was unwarranted and inequitable under the circumstances.

The effect of a strict foreclosure is to terminate all the interest of the mortgagor upon his failure to comply with his contract, and usually where the doctrine is applied the courts are clothed with discretionary power to allow the debtor a reasonable time to pay the debt and thus redeem

his property. This court has permitted the application of the doctrine of strict foreclosure in numerous cases. *Gallagher v. Giddings*, 33 Neb. 222; *Patterson v. Mikkelson*, 86 Neb. 512; *Foster v. Ley*, 32 Neb. 404. This court has held many times that, where a deed absolute upon its face has been executed and delivered and was intended as a mortgage, notwithstanding such an intention, the legal title to the premises is vested in the grantee, and the only right the grantor can have under such circumstances is to pay the amount due and thus receive a reconveyance thereof. *Stall v. Jones*, 47 Neb. 706; *Zittle v. Schlesinger*, 46 Neb. 844; *First Nat. Bank of Plattsmouth v. Tighe*, 49 Neb. 299; *First Nat. Bank of David City v. Speltz*, 94 Neb. 387.

It might be argued that this court in its earlier decisions has been somewhat inaccurate in its phraseology in discussing this subject. To hold that an instrument intended as security for a debt is a mortgage, and to hold further that the title to the mortgaged premises is in the grantee, seems to be slightly inconsistent in view of this court's definition of a mortgage.

"A mortgage is a mere pledge, or collateral security, creating a lien upon the mortgaged property, by conveying no title or vesting no estate either before or after condition broken." *Kyger v. Ryley*, 2 Neb. 20.

This doctrine has been reaffirmed in *Clark v. Missouri, Kansas & Texas Trust Co.*, 59 Neb. 53; *Orr v. Broad*, 52 Neb. 490, and in numerous other cases. A mortgage has been held by this court as a mere lien upon real estate for the purpose of securing an indebtedness, with the legal title retained by the mortgagor; and the equitable interest of the mortgagee is personal property only. The method of divesting the mortgagor of his title is by foreclosure and sale of the premises.

In a case where the instrument appears on its face to be an absolute conveyance, or warranty deed, and where the title has passed to the grantee, as this court has held it does, even although the parties intended it as security for a debt, we think under the holdings of this court the

grantor has conveyed to the grantee all the interest that he has in the premises, and retains only, by operation of equity, the right to pay the indebtedness to the grantee and receive a reconveyance of the title. If, under these circumstances, the instrument amounts to a mortgage, as the courts have said it does, then the procedure would be foreclosure and sale in order to divest the mortgagor of his interest in the premises. A sale, under such circumstances, could not be decreed for the purpose of divesting the mortgagor of his legal title, because he has already voluntarily divested himself of it by his deed of conveyance. It would not be strict logic to say that in case of a foreclosure and sale, and there were no bidders at the sale, the grantee would be required to purchase land of which he is already the owner, in order to protect his rights. The grantor's interest, under such circumstances, is a mere right to tender the amount of money the grantee has paid for the grantor, at the contract rate of interest, and receive a reconveyance of his title. Those cases which we have examined in which a sale of the premises was had are based upon foreclosure of a mortgage containing a defeasance clause, and not such an instrument as under consideration here. Where the mortgagor avails himself of the right of redemption under a mortgage with the defeasance clause, the only thing required of him to do is to pay the debt. In the event the grantor under the circumstances involved in this case desires to protect himself, he is required to do two things: Pay the debt, and obtain a reconveyance of his title, which, if refused, he could enforce in a court of equity. Applying the doctrines already announced by this court and treating the title as already vested in the grantee, it seems to us that the trial court could have logically rendered no other decree than one in the nature of strict foreclosure.

In the case of *Patterson v. Mikkelson*, 86 Neb. 512, the rule seems to be that courts of equity allow a decree of strict foreclosure in cases where it would be inequitable to do otherwise. The right of the court so to decree seems

to repose in its sound discretion. We find no abuse of discretion on the part of the trial court in rendering that part of the decree which is in the nature of a strict foreclosure.

The only remaining question left for us to consider is whether or not the trial court abused that discretion in limiting the period of the defendants' right to reconveyance of the premises to thirty days.

Courts of equity, in cases where it can be done without doing violence to an established principle of law, should afford debtors any reasonable opportunity to make good their engagements and thus avoid forfeiture of the title to their property. Under the circumstances, we conclude that the court abused its discretion in limiting this period to thirty days. We take the view that the time given the defendants to make payment of the indebtedness and secure a reconveyance of the premises should, under the circumstances, and in consideration of the rights of all parties, be reasonable; that nine months, the ordinary period of a stay of execution, is not unreasonable, and such time is hereby extended to nine months from the time the mandate of this court issues.

With these modifications, the decree is affirmed.

AFFIRMED AS MODIFIED.