GEORGE A. BIRDSALL, APPELLANT, V. ANDREW J. CROPSEY ET AL., APPELLEES.

[FILED FEBRUARY 4, 1890.]

1. **Vendor's Lien.** A vendor of real estate has an equitable lien upon the lands for the unpaid purchase money as between him and the vendee, and those claiming under the vendee with notice, in all cases where the vendor has contracted to convey, but has made no conveyance.

2. ———: NOTICE OF ADVERSE EQUITY. If a vendee makes payment of any part of the consideration after receiving notice of an adverse equity, to that extent he is not a *bona fide* purchaser.

3. ———. Upon the facts set out at length in the opinion, *held*, that the appellant is entitled to a vendor's lien.

APPEAL from the district court for Lancaster county. Heard below before CHAPMAN, J.

*J. R. Webster*, and *E. P. Holmes*, for appellant, cited: *Campbell v. Nesbitt*, 7 Neb., 303; *DeNayer v. Bank*, 8 Id., 108; *Rhea v. Reynolds*, 12 Id., 133; *Whitehorn v. Cranz*, 20 Id., 398; *Richardson v. Hardwick*, 106 U. S., 254; *Quick v. Wheeler*, 78 N. Y., 303; *C., etc., R. Co. v. Dane*, 43 Id., 242; *Gregory v. Cameron*, 7 Neb., 419; *D., etc., Tpk. Co. v. McCoy*, 13 O. St., 91; *Smith v. Reynolds*, 3 McCrary [U. S.], 157; *Dorsey v. Hall*, 7 Neb., 465; *Earle v. Burch*, 21 Neb., 707; *Veith v. McMurtry*, 26 Id., 341; *Lane v. Starkey*, 15 Neb., 289.

*Charles O. Whedon*, for appellees Briscoe and Van Duyn, cited: *Campbell v. Nesbitt*, 7 Neb., 303.

*J. A. Marshall*, for appellee Hawley.

NORVAL, J.

This is an action to foreclose a vendor's equity for purchase money of real estate sold by Hannah E. Birdsall to the defendant Andrew J. Cropsey. Plaintiff is vendor's assignee of the right to deferred payment. William C. Hawley and Mary S. Hawley made conveyance of the premises to Cropsey; Briscoe and Van Duyn are grantees of Cropsey, holding the fee to the premises. The district court dismissed the plaintiff's bill and he appeals.

It appears by the pleadings and evidence that on the 31st day of December, 1886, the defendants Hawley made two written contracts for the sale of the lands in question to

43

Andrew J. Cropsey, Emma R. Cropsey, and Hannah E. Birdsall; one for the west half ($\frac{1}{2}$) of the southeast quarter ($\frac{1}{4}$) of section sixteen (16), in township ten (10) north, of range seven (7) east, and the other for the east half ($\frac{1}{2}$) of the same quarter ($\frac{1}{4}$) section. These contracts to convey were conditioned that the vendees, in addition to $150 paid down, should pay $150 by June 1, 1887, $3,849.99 by January 1, 1888, $3,849.99 by January 1, 1889, $3,849.99 by January 1, 1890, and assume certain mortgages then against the land. The contracts also provided for a forfeiture in case of default, on thirty days' written notice. The contracts were ·duly acknowledged, and were filed for record January 3, 1887. On the 1st day of January, 1887, the Cropseys and Hannah E. Birdsall entered into a written agreement with each other "that if either failed to make his or her share of the future payments on the contracts with the Hawleys for thirty days, the other or either of them may make the payments, and the one making the same shall take a deed for the premises, the others relinquishing all claims to them." This contract was acknowledged, and December 24, 1887, it was duly recorded. On the 2d day of June, 1887, Hannah E. Birdsall made a contract of sale of her one-third interest of all of said lands, excepting ten acres in the southwest corner, to the defendant A. J. Cropsey, and agreed to convey the same by warranty deed, subject to certain mortgage incumbrances, in consideration that A. J. Cropsey pay $1,000 in hand, assume and pay the deferred payments to the Hawleys, and pay Mrs. Birdsall $2,000 in payments, $161.21 then deducted as Birdsall's portion of the payments then falling due on the Hawley contracts, $500 due October 2, 1887, $332.79 due January 1, 1888, and $1,000 due June 2, 1888, with interest at eight per cent from June 2, 1887. This contract was acknowledged, and was duly recorded December 24, 1887. Cropsey paid Birdsall the $1,000 cash payment, but made no other payments under the contract. On the

2d day of January, 1888, the Hawleys served a written
notice on Edward H. Birdsall, the husband and agent of
Hannah E., and also on both the Cropseys, to comply with
the contracts or they would be canceled.   At the time of
the service of this written notice Mr. Hawley was in-
formed by the agent of Hannah E. Birdsall " that they had
sold their interest in the contracts to Mr. Cropsey and
hadn't anything to do with it."

It also appears that the Cropseys and Birdsalls were un-
able to make the payment that fell due January 1, 1888,
so it was agreed between Hannah E. Birdsall and A. J.
Cropsey on the 28th day of January, 1888, that the Haw-
leys should convey the lands to the Cropseys; that they
should then convey the same, excepting ten acres, to the
defendants Briscoe and Van Duyn; that Briscoe and Van
Duyn should pay to the Hawleys the balance due them on
the contracts; that as a part of the purchase price Briscoe
and Van Duyn were to convey to the Cropseys certain
lands in Adams county; that upon this land Cropsey
agreed to give Mrs. Birdsall a mortgage for $1,200 in full
for her equity in the land, and in consideration thereof she
was to release any claim she might have upon the land
conveyed to Briscoe and Van Duyn.   On the 28th day of
January, 1888, the Hawleys conveyed the quarter section
to the Cropseys and on the same day they conveyed all
excepting ten (10) acres to Briscoe and Van Duyn.   The
latter paid the Hawleys the balance due them on the con-
tracts—part in cash and the rest secured by mortgage,
which has since been fully paid.   They also executed a deed
to Cropsey for the Adams county land as agreed.

It is established by the weight of the evidence that
Cropsey agreed to give a mortgage to Mrs. Birdsall on the
Adams county land to secure the payment of $1,200 for
her equity in the land, and that no mortgage was ever
given or tendered by the Cropseys as promised.   A day or
two after Briscoe and Van Duyn received their deed, and

before they had delivered to Mr. Cropsey the deed for the land in Adams county, Mr. Van Duyn was notified by Mrs. Birdsall's attorney that Cropsey had refused to execute the mortgage, and he was then informed by Mr. Van Duyn "that the deed had been deposited in the Lincoln National Bank to be held until Cropsey should fix up with the Birdsalls."

On the 1st day of March, 1888, the Birdsalls assigned all their interest in the contract with Cropsey to the plaintiff herein, George A. Birdsall. It is undisputed that Hannah E. Birdsall contracted to convey her undivided one-third interest in the land in controversy to A. J. Cropsey on his first making the deferred payments, and that these payments have never been made is not questioned. Mrs. Birdsall's assignee, the plaintiff, is entitled to a lien on said one-third interest for the balance of the unpaid purchase money, unless the right to such lien has been waived. It is the established law of this state that the vendor of real estate has an equitable lien upon the land for the unpaid purchase money, as between him and the vendee, and those claiming under such vendee with notice, in all cases where the vendor has only contracted to convey, but has made no conveyance. (*Rhea v. Reynolds*, 12 Neb., 128; *Dorsey v. Hall*, 7 Id., 460; *Whitehorn v. Cranz*, 20 Id., 392.)

It is contended that Mrs. Birdsall lost her right to a vendor's lien by virtue of the written contract entered into between her and the Cropseys on the 1st day of January, 1887, which provided "that if either party failed to make his or her share of the future payments on the Hawley contract for thirty days, the one making the same should receive the deed." This position cannot be sustained, for two reasons: first, that the conveyance was made by the Hawleys to the Cropseys before the expiration of the thirty days provided for in this contract; second, after entering into this agreement of January 1, Mrs. Birdsall con-

tracted to convey her interest in the land to Cropsey, and in that contract Cropsey assumed and agreed to make all the future payments to the Hawleys. The agreement of January 1 was then no longer in force.

The next contention is that plaintiff is estopped from claiming a lien upon the land because Mrs. Birdsall's agent, when served with notice of the Hawleys' intention to cancel the contracts, stated to Mr. Hawley "that they had sold their interest in the contracts to Mr. Cropsey and hadn't anything to do with it." At that time Mrs. Birdsall had contracted to convey her interest to Cropsey and he had assumed to make the payments to the Hawleys. When the above conversation took place this contract was of record, and the Hawleys had constructive notice of the terms of the sale, and it was their duty to ascertain whether Cropsey had made the deferred payments to Mrs. Birdsall. This statement of Mrs. Birdsall's agent was truthful, and in effect simply informed Hawley of what the records already showed, and of which he had constructive notice. Hawley was not informed that full payment had been made to Mrs. Birdsall.

Briscoe and Van Duyn claim to be *bona fide* purchasers, and that too with the constructive notice given by the records, of the existence of the contracts above referred to. In addition to the notice which the records gave, the evidence shows that Briscoe and Van Duyn had actual knowledge of Mrs. Birdsall's rights, at least before all of the consideration was paid. Mr. Holmes, who represented Mrs. Birdsall, went to Mr. Van Duyn a day or two after the Cropseys had made the conveyance to Briscoe and Van Duyn and informed him that Cropsey refused to give a mortgage on the Adams county land to secure the $1,200, the amount that Mrs. Birdsall was to receive for her equity, and Van Duyn informed Mr. Holmes that the deed to the land in Adams county had not been delivered to Cropsey, but was deposited in the bank to remain until Cropsey

fixed up with Mrs. Birdsall.   Mr. Van Duyn testifies on this subject as follows:

Q. Now, at the time of the conversation with Holmes was the deed to Cropsey delivered?

A. No, sir.

\*          \*          \*     °     \*          \*          \*          \*

Q. Now about the delivery of it; did you and Briscoe have any conference or talk what you would do with it?

A. I think there was some talk about it; yes, sir.

Q. Was it arranged that he was to put it in the bank?

A. I think there was some talk that he was to put the deed in the bank.

Redirect:

Q. Now, were you informed that upon this Hastings land Birdsall was to have a mortgage?

A. Yes, sir.

Q. You understood that Birdsall was to be secured on the Adams county land?

A. Yes, sir.

Q. And Birdsall was to be secured for the amount that Cropsey was to pay Birdsall?

A. Yes, sir.

Re-cross-examination:

Q. And the deed was then in the bank, was it?

A. Yes, sir.

Q. Was that the talk, that it was to be deposited and he not to have it until this was fixed up?

A. There was some talk of that kind I think.

Briscoe and Van Duyn having actual knowledge of the rights of Mrs. Birdsall while the deed to the Adams county land was under their control, they are not *bona fide* purchasers. (*Savage v. Hazard*, 11 Neb., 327; *Earle v. Burch*, 21 Id., 707.)

The record before us leaves it uncertain whether the deed from Briscoe and Van Duyn was ever delivered to

Cropsey.  If delivered, it was certainly after Briscoe and Van Duyn had actual notice of Mrs. Birdsall's equity.

It is urged that Mrs. Birdsall released her claim upon the land.  There is no evidence in the record that she agreed to look to Cropsey personally for her pay, but on the other hand it is certain that she was to be secured for her equity by a mortgage on the lands in Adams county, and that Briscoe and Van Duyn so understood it.  No mortgage has ever been given or tendered.

After a careful consideration of the evidence contained in the bill of exceptions, we have reached the conclusion that the appellant is entitled to a lien on the undivided one-third of the land conveyed by the Cropseys to Briscoe and Van Duyn, for the sum of $1,200, with seven per cent interest thereon from January 28, 1888.  The judgment of the district court is reversed and a decree will be entered in this court for the appellant for said sum, interest, and costs of both courts.

JUDGMENT ACCORDINGLY.

THE other judges concur.