CARLYSLE O. DAVISON ET AL., APPELLEES, V. ROBIN CHARLENE INSELMAN ET AL., APPELLANTS.

175 N. W. 2d 85

Filed March 6, 1970. No. 37192.

Thomas J. Gorham, for appellant.

Walter, Albert, Leininger & Grant, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

The question is whether the parties to a deed absolute in form intended a mortgage. The district court found a mortgage, quieting title in plaintiffs. Defendants appeal.

Plaintiff Carlysle "Lyle" O. Davison is an uncle of the principal defendants, Robin and Mary, children of Robert and Doris Davison, whose marriage ended in divorce. Robert died intestate in December 1965.

The dispute concerns a quarter section of farmland with buildings located in Nance County and valued as of December 1965 at $25,600. Robert owned the farm in 1952, but a partnership of the two brothers cultivated and improved it from 1952 through 1965. Robert contributed little service to the partnership, but in addition to his contribution of half the capital he lent money to Lyle. The initial loan was evidenced by Lyle's promissory note of September 1, 1952, for $3,742.18, payable to Robert 6 months after date. On October 13, 1958, Lyle gave his promissory note for $7,950, payable to Robert 6 months after date and secured by a chattel mortgage. The amount which was composed of the original indebtedness and additional advancements has not been paid except perhaps $500. The loans enabled Lyle to contribute his share of partnership capital.

The partnership over the years expended approximately $11,000 on the farm for taxes and materials that went into permanent improvements including a cabin. Building the improvements and farming the land were largely the work of Lyle, who with his wife had moved there in 1952.

The partnership paid no rent as such, receiving all income from the farm. Profits and losses were to be shared equally, but the account balance was almost always too small for a distribution.

On October 4, 1956, Robert conveyed to Lyle complete property in the farm subject to encumbrances of record. Robert received $1 for the deed which stated:

"ONE and no/100 ($1.00) and other valuable consideration." The deed was filed of record October 5. In the transaction Robert received from Lyle and wife the disputed deed which stated a consideration of $1. The deed was preserved but not recorded in Robert's lifetime. Lyle, according to his testimony, had delivered it as a mortgage notwithstanding his knowledge of the chief difference between the instruments. Delivering the chattel mortgage on October 13, 1958, he intended to substitute security.

Evidence of some transactions tends to imply that Robert retained complete property in the farm. In 1962 he negotiated with a telephone company for service to the brothers. Lyle's application included a performance guaranty signed by Robert. It was company practice to solicit a guaranty from the owner in case of an application by the tenant. Accompanying the brothers' applications was a grant of easement signed by Robert as the landowner. Through the year 1964 at the "A. S. C. Office" Lyle signed up as operator, and Robert as owner, of the farm.

Testimony of Doris and several witnesses akin to her by blood or marriage is to this effect: Robert made statements inconsistent with ownership of the farm in Lyle, and after Robert's death Lyle repeatedly admitted he was not the owner. Lyle denied making the statements.

From 1957 to 1964 Robert, according to two close friends and an acquaintance, had declared ownership of the farm in Lyle: "I would ask him how he was going to pay Lyle for what he had done . . ., that farm was run down. . . . And he said 'well, it was Lyle's farm'." "I was kidding him about . . . how much money he had made and how he was accumulating land and . . . he said, 'Well, you can't accuse me of owning any land because I put the land that I did have in my brother's name.'" "He had, I said, a nice set up here (at the

cabin) and he said, 'No, that is Lyle's. . . . I just come down here to . . . relax.' "

A stranger who, in March 1963, had heard that Robert might sell the farm testified: "I went to see . . . Robert Davison, and he told me that the farm wasn't his to sell, that it belonged to his brother. . . . He referred me to Lyle and I went out and talked to him and he said it wasn't for sale. . . . Well; he wondered if I had seen Robert and I said yes and that Robert said that it wasn't his farm."

A life insurance agent who was not acquainted with Lyle conferred with Robert in 1965. The agent's deposition reads: "We talked about his brother, . . . there was something about a cottage. . . . And I got the impression that . . . this brother had some interest in this farm as a long-range program. I don't know what the thing was."

The district court for Lancaster County had allowed Doris the divorce, alimony, and support for Robin and Mary, ages 12 and 7, on October 4, 1956. On October 25 Doris commenced suit in the district court for Nance County to set aside the deed to Lyle for fraud on creditors, alleging recordation of the divorce decree in Nance County on October 19. The answer verified on belief by Robert and filed June 4, 1957, admitted execution, delivery, and recordation of the deed to Lyle. Without disclosing the deed back, the answer alleged that Lyle owned the farm. A formal order of dismissal without prejudice was entered February 8, 1966.

Whether a deed absolute in form is a mortgage depends upon the intention of the parties. Their intention may be evidenced not only by the document in question but also by their declarations and conduct. Evidence to prove a mortgage in such a case must be clear and convincing. The requirement is based on presumptions: Express terms of a written instrument, or relation of the parties, may raise such presumptions that proof of more than ordinary cogency is required to create a pre-

ponderance of evidence. Until overcome by clear and convincing proof, the terms of the instrument stand as evidence of the intention of the parties. Norton v. Dosek, 161 Neb. 554, 74 N. W. 2d 56 (1955); Topping v. Jeanette, 64 Neb. 834, 90 N. W. 911 (1902); Stall v. Jones, 47 Neb. 706, 66 N. W. 653 (1896).

Reviewing the case de novo but considering the opportunity of the trial judge for observation of the witnesses, we affirm the judgment.

AFFIRMED.