DALE W. REES ET AL., APPELLANTS, V. M.B. HUFFMAN, APPELLEE.

384 N.W.2d 631

Filed April 11, 1986.   No. 84-811.

Boyd W. Strope and Wally Eklund, for appellants.

Stephen K. Yungblut of Hughes & Luce, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

The plaintiffs-appellants appeal a ruling of the district court for Rock County, Nebraska, denying their claim for breach of contract damages arising out of an agreement to sell stock. We reverse.

Dale Rees was an employee of Commercial Bank in Bassett, Nebraska. Rees and his wife, the plaintiffs, signed an agreement in 1966 whereby they purchased 60 shares of stock in Commercial Bank from the defendant, M.B. Huffman. The agreement also provided for the Reeses to sell the stock back to the defendant when they decided to sell their interest.

Rees terminated his employment with Commercial Bank in June of 1979, and in conjunction therewith the parties arranged for Huffman to purchase the stock. At that time the original 60 shares had grown to 180 shares due to a 3-for-1 stock split. The parties agreed that 90 shares would be sold in July of 1979, and the other 90 shares would be sold in January of 1980.

Pursuant to the contract, the plaintiffs elected to have the value of the July stock sale determined as of June 30, 1979. The purchase price of the stock was to be based on the book value of the bank. Neither party complains regarding the first transaction.

In a letter dated December 27, 1979, Dale Rees tendered the 90 remaining shares and requested payment based on the January 2, 1980, valuation of the bank. Huffman responded by sending two checks, totaling $38,096.10, accompanied by a letter which indicated the payments were based on the June 29, 1979, valuation. Rees cashed the checks on January 8.

Thereafter, in the *latter part of January*, Rees, who was living in Arizona, came across the bank's statement of condition as of December 31, 1979, in the Rock County Leader,

a weekly newspaper. Based on the bank's financial condition at that time, the plaintiff determined that he had been underpaid $4,881.56 for the second stock sale. Rees corresponded with Huffman, demanding payment based on the later valuation. The defendant indicated that he had given the plaintiffs "a break on the price" and stated that they had received a fair price for their stock.

The Reeses brought this action in the district court for Rock County to recover the balance they claim is due and owing on the second stock transfer. The district court ruled for the defendant, holding that the contract provided for the choosing of one date for the valuation of the stock, and also that an accord and satisfaction had been reached. The plaintiffs assign as error both of these findings.

Paragraph 3 of the 1966 stock purchase agreement reads as follows:

> The first party, M. B. Huffman, his heirs, or assigns, hereby agrees to buy all of second parties [Dale and Mary Rees'] stock for cash at a price to be hereafter computed at book value. Book value of the stock to be the total of the capital, surplus, undivided profits and reserve for losses divided by the number of outstanding shares of the capital stock of said corporation. The book value is to be computed as of the 1st of January during the year which the parties of the second part desire to sell, or at any other date thereafter at the election of the party [sic] of the second part.

It is the last sentence of the paragraph which has given rise to this dispute. The plaintiffs argue that they are empowered to choose the valuation date for *each* sale, while the defendant asserts that the language provides for one, and only one, valuation date.

> We have previously said on a number of occasions that a written contract expressed in unambiguous language is not subject to interpretation or construction, and the intention of the parties must be determined from its contents alone . . . and that a trial court is not free to rewrite a contract for the parties or speculate as to the terms of a contract which the parties have not seen fit to

set out or are contrary to the express terms of the contract
. . . .

(Citations omitted.) *Kansas-Nebraska Natural Gas Co. v. Swanson Bros.*, 215 Neb. 398, 400, 338 N.W.2d 774, 775 (1983).

Further, in construing a contract, words "must be given their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them," and "the contract must be viewed as a whole." *Bass v. Dalton*, 213 Neb. 360, 362-63, 329 N.W.2d 115, 117 (1983).

In viewing the contract as a whole, it is clearly the intent of the parties that the stock would revert back to the defendant at such time as "the parties of the second part desire to sell." In looking at paragraph 5 of the agreement, is it also clear that the parties contemplated a situation wherein the Reeses may have wanted to sell some, but not all, of their stock at a time. This provision states: "The second parties agree not to sell said stock *or any portion thereof* to any person other than the [defendant] . . . ." (Emphasis supplied.) Additionally, paragraph 4 binds the plaintiffs, their heirs or assigns, to offer their stock to the defendant "should they exercise their election or demand upon the [defendant] . . . ." This language contemplates that the Reeses have the power to initiate sales.

Evaluating paragraph 3 in light of the agreement's other provisions, there is no apparent limitation on the plaintiffs' ability to determine the timing and quantity of any sale. Consistent with this is the provision empowering the plaintiffs to set the valuation date for a sale. The price is to be set, based on book value, "as of the 1st of January during the year which the parties of the second part desire to sell, or at any other date thereafter at the election of the party [sic] of the second part." This language in no way limits the plaintiffs to one sale or to one selling price. To the contrary, the contract provides that the price is to be set based in some part on *when* it is sold.

In light of the parties' contemplation of multiple sales and the contractual relationship between the time of sale and the price, a consistent reading of the agreement requires a finding that the parties provided for a separate determination of price for each sale. We believe this is the meaning ordinary, reasonable persons would derive from this agreement.

Consequently, we reverse the district court's ruling that the contract provided for a single determination of price.

The plaintiffs' second assignment of error urges that the lower court wrongly found that an accord and satisfaction was reached.

> Here applicable is a well-settled principle of Nebraska law that where a certain sum of money is tendered by a debtor to a creditor on condition that he accept it in full satisfaction of his demand, the sum due being in dispute, the creditor must either refuse the tender or accept it as made subject to the condition. *If he accepts it, he accepts the condition also, notwithstanding any protest he may make to the contrary.*

(Emphasis in original.) *Langness v. "O" Street Carpet Shop*, 217 Neb. 569, 575, 353 N.W.2d 709, 713 (1984).

Further, "[i]t is essential that there be a bona fide dispute between the parties, that the substituted performance be tendered in full satisfaction of the claim, and that the tendered performance be accepted." *High-Plains Cooperative Assn. v. Stevens*, 204 Neb. 664, 667, 284 N.W.2d 846, 849 (1979).

It is apparent from the record that the defendant did not meet his burden of proof in showing that the substituted performance was tendered in full satisfaction of the claim. His tender was accompanied by a letter stating: "You will find enclosed my checks totaling $38,096.10 for 90 shares of Commercial Bank stock @ $423.29 per share based on 29 June 1979 valuation." The only notation on the check referenced the certificate numbers and amount of stock being paid for. The defendant made no condition that the money be accepted as a full payment or not be accepted at all.

As noted in *Langness v. "O" Street Carpet Shop, supra* at 575, 353 N.W.2d at 714: "We think the better rule is that such condition must either be recited upon the check or otherwise declared." Since no condition was declared, there was no accord and satisfaction.

The defendant contends that the conduct of the parties modified the contract. He urges that plaintiffs' submission of the stock was an offer which defendant rejected and thereafter made a counteroffer which plaintiffs accepted by cashing the

checks without protest. The rule of law in Nebraska is that " '[a] written executory contract may be modified by the parties thereto at any time after its execution and before a breach has occurred, without any new consideration . . . .' " *Cole v. Hickey*, 215 Neb. 728, 732, 340 N.W.2d 418, 420 (1983).

Huffman's argument ignores two critical factors. First, his rejection of the Reeses' tender would constitute a breach of the agreement. The contract gives him *no* discretion to determine the selling price of the stock. Resultingly, his failure to honor the plaintiffs' demand breached the contract. Second, neither party intended to modify the contract. Both parties testified that they were acting under the terms of the agreement. Huffman specifically indicated that, to his knowledge, the agreement was never modified, changed, canceled, or rescinded. The defendant conceded his point.

The plaintiffs claim damages in the amount of $4,881.56, based on the difference in the amount paid and the valuation of the stock as determined from the bank's statement of condition at the close of business December 31, 1979. The defendant contends that an adjustment must be made to the book value to obtain the bank's condition as of January 2, 1980, to reflect 1979 tax liability. The only evidence of this is defendant's testimony, which indicates that the January 2, 1980, valuation would be approximately $6.25 per share lower. No supporting documents or evidence of the figure's derivation was offered. Without more, the defendant has failed to adequately prove a change in the bank's financial position between December 31, 1979, and January 2, 1980.

The decision of the district court is reversed, and the cause is remanded with directions to enter judgment in favor of the plaintiffs in the amount of $4,881.56.

REVERSED AND REMANDED WITH DIRECTIONS.