ALAN J. MACKIEWICZ, TRUSTEE, ET AL., APPELLANTS, V. J.J. & ASSOCIATES, A NEBRASKA GENERAL PARTNERSHIP, ET AL., APPELLEES.

514 N.W.2d 613

Filed April 8, 1994. No. S-92-583.

Alan J. Mackiewicz, of Lich, Herold & Mackiewicz, for appellants.

G. Michael Wiseman, of Wiseman Law Office, for appellees Wiseman and Resolution Trust Corporation.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

In this foreclosure action, the plaintiff-appellant trustee, Alan J. Mackiewicz, and the plaintiffs-appellants vendors and trustees-beneficiaries, George D. Goos and George W. Venteicher, seek to enforce the terms of the deeds of trust executed by the defendant-appellee purchaser, J.J. & Associates, a partnership. The district court determined that the lien of the defendant-appellee Resolution Trust Corporation (RTC), for which the defendant-appellee G. Michael Wiseman serves as successor trustee, was superior to those of Goos-Venteicher and ordered foreclosure in accordance with that determination. Goos-Venteicher then undertook this appeal, persuading us, pursuant to the provisions of Neb. Rev. Stat. § 24-1106(2) (Cum. Supp. 1992) and Neb. Ct. R. of Prac. 2B (rev. 1992), to bypass the Nebraska Court of Appeals. The appellants' assignments of error combine to claim, in summary, that the district court mistakenly determined (1) that they were not entitled to liens with priority over RTC's lien and (2) that even if they were entitled to priority, there had been an accord and satisfaction between them and J.J. & Associates. RTC argues that even if there had been no accord and satisfaction, there was a novation precluding Goos-Venteicher from asserting prior liens. We

affirm as modified.

## II. SCOPE OF REVIEW

A foreclosure action is grounded in equity, *Metropolitan Life Ins. Co. v. Kissinger Farms*, 244 Neb. 620, 508 N.W.2d 568 (1993), as is an action to determine the priority of liens, *Reilly v. First Nat. Bank & Trust Co.*, 220 Neb. 443, 370 N.W.2d 163 (1985).

In an appeal of an equity action, an appellate court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *How v. Mars, ante* p. 420, 513 N.W.2d 511 (1994); *Fritsch v. Hilton Land & Cattle Co., ante* p. 469, 513 N.W.2d 534 (1994); *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993).

However, regarding a question of law, an appellate court has an obligation to reach a correct conclusion independent of that reached by the court below. *Powell v. American Charter Fed. Sav. & Loan Assn., ante* p. 551, 514 N.W.2d 326 (1994); *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994).

## III. FACTS

On December 21, 1987, Goos-Venteicher sold two lots to J.J. & Associates under separate installment land contracts which were recorded on December 30, 1987. According to the terms of the contracts, J.J. & Associates paid $10,000 down on each lot, and the balances of $33,000 and $34,500 were to be paid in three subsequent installments, the first installment becoming due on December 21, 1988. Contemporaneously with the execution of the land contracts, Goos-Venteicher executed warranty deeds to J.J. & Associates for each lot, and J.J. & Associates executed quitclaim deeds for the lots to Goos-Venteicher. All four deeds were placed in escrow; under the terms of the land contracts, the warranty deeds were to be delivered to J.J. & Associates upon payment in full of the purchase price; the quitclaim deeds were to be recorded upon written notification to the escrow

agent that J.J. & Associates had defaulted.

Unknown to Goos-Venteicher, J.J. & Associates executed, on May 10, 1988, a promissory note to Occidental Nebraska Federal Savings Bank in the amount of $500,000, together with a deed of trust covering four lots, the two Goos-Venteicher lots and two Occidental lots. This Occidental deed of trust was recorded on June 9, 1988. J.J. & Associates used the Occidental loan to refinance the purchase price and improvements on the two Occidental lots and to provide an influx of operating cash to a corporation owned by it. RTC, as the receiver for Occidental, is the assignee of Occidental's beneficial interest under the Occidental deed of trust.

When J.J. & Associates failed to make the December 21, 1988, payment due Goos-Venteicher, the latter executed an amendment and modification to each of the land contracts, under which the December 21 payment was changed to an interest-only payment and the principal part of the payment was deferred to August 1, 1989; the second and third installments remained the same. However, J.J. & Associates also failed to make the payments due August 1. Goos-Venteicher then executed warranty deeds dated September 15, 1989, for each of the lots they had sold. Each deed recites that it "is given in satisfaction of a Land Contract dated December 21, 1987." On October 18, 1989, J.J. & Associates delivered to Goos-Venteicher promissory notes, deeds of trust, and acknowledgments of deeds of trust for each of the two lots. The warranty deeds, Goos-Venteicher deeds of trust, and acknowledgments of those deeds were recorded on October 24, 1989. The principal amounts due under the promissory notes are the same as the principal amounts due under the land contracts as amended and modified. Under the terms of the notes, J.J. & Associates was required to pay monthly all accrued interest on the unpaid balance and, in addition, pay $1,000 on each March 15 and September 15 until the principal and interest were paid in full.

This action resulted as the consequence of J.J. & Associates' failure to make the payments due on September 15, 1990. J.J. & Associates is also in default on the Occidental transaction.

## IV. ANALYSIS OF SUMMARIZED ASSIGNMENTS OF ERROR

With that factual background in mind, we turn our attention to the summarized assignments of error.

### 1. SUPERIORITY OF LIENS

In maintaining in the first assignment of error that the district court erred in finding they did not have first liens on each lot they had sold, the appellants urge that (a) there is no essential difference between a lien created under a land contract and one created by a mortgage, and (b) the documents executed after J.J. & Associates' initial default did not operate so as to permit an intervening lien to take priority.

### (a) Nature of Land Contract

In a mortgage, the mortgagor subjects his or her property to a lien as security for a debt, but retains title and right to possession of the property. See, *Dupuy v. Western State Bank*, 221 Neb. 230, 375 N.W.2d 909 (1985); *Morrill v. Skinner*, 57 Neb. 164, 77 N.W. 375 (1898); *Davidson v. Cox*, 11 Neb. 250, 9 N.W. 95 (1881). A mortgage is a mere pledge or collateral security for the payment of money. *Fiske v. Mayhew*, 90 Neb. 196, 133 N.W. 195 (1911).

As in a mortgage, one selling under an installment land contract agrees to accept payments from the buyer, generally by a series of installments over time, until the purchase price as established by the contract has been paid. When the contract price has been paid, the seller must deliver a deed of title to the buyer. *Matter of Estate of Ventling*, 771 P.2d 388 (Wyo. 1989). Under such an arrangement, the seller retains the legal title as security for the deferred installments of the purchase price, and the buyer acquires equitable ownership of the property. *DeBoer v. Oakbrook Home Assn.*, 218 Neb. 813, 359 N.W.2d 768 (1984). See, *Beren Corp. v. Spader*, 198 Neb. 677, 255 N.W.2d 247 (1977); *Buford v. Dahlke*, 158 Neb. 39, 62 N.W.2d 252 (1954). The net result is that the seller holds the legal title in trust for the buyer. *Matter of Estate of Ventling, supra*; *Bank of Santa Fe v. Garcia*, 102 N.M. 588, 698 P.2d 458 (N.M. App. 1985), *cert. denied sub nom., Espinoza v. Bank of Santa Fe*, 102 N.M. 613, 698 P.2d 886. The buyer in possession, on the

other hand, is, for all practical purposes, the owner of the property, with all the rights of an owner, subject only to the terms of the contract. *Bean v. Walker*, 95 A.D.2d 70, 464 N.Y.S.2d 895 (1983).

This court has uniformly recognized that in construing instruments conveying property, equity concerns itself with the substance and not the form of the transaction and that the particular form or words of a conveyance are unimportant if the intention of the parties can be ascertained. See, *Koehn v. Koehn*, 164 Neb. 169, 81 N.W.2d 900 (1957); *Campbell v. Ohio National Life Ins. Co.*, 161 Neb. 653, 74 N.W.2d 546 (1956); *Ashbrook v. Briner*, 137 Neb. 104, 288 N.W. 374 (1939); *Northwestern State Bank v. Hanks*, 122 Neb. 262, 240 N.W. 281 (1932). Stated another way, a court of equity will look to the substance of the transaction, rather than give heed to the mere form it may assume. *Peoples Bank v. Trowbridge*, 123 Neb. 312, 242 N.W. 647 (1932). The duty of the courts is to carry into effect the true intent of the parties. Neb. Rev. Stat. § 76-205 (Reissue 1990); *Dupuy v. Western State Bank, supra*; *In re Estate of Darr*, 114 Neb. 116, 206 N.W. 2 (1925); *Jackson v. Phillips*, 57 Neb. 189, 77 N.W. 683 (1898). See *Davison v. Inselman*, 185 Neb. 236, 175 N.W.2d 85 (1970). This intention may be evidenced not only by the document but also by the declarations and conduct of the parties. *Id.*

More specifically, it is "generally accepted that if an instrument executed by parties is intended by them as security for a debt, whatever may be its form or name, it is in equity a mortgage." *Campbell v. Ohio National Life Ins. Co.*, 161 Neb. at 659, 74 N.W.2d at 552. See, *Northwestern State Bank v. Hanks, supra* (particular form or words of the conveyance are unimportant); *Fiske v. Mayhew, supra*.

As with the terms used in describing a mortgage, this court has repeatedly termed a purchaser's interest under an executory land contract as both a "security" and a "lien" upon the land. See, *DeBoer v. Oakbrook Home Assn., supra* (legal title remaining in seller only as security for payment); *Beren Corp. v. Spader, supra* (seller retains legal title as security for deferred installment payments); *Hendrix v. Barker*, 49 Neb. 369, 68 N.W. 531 (1896) (purchaser's interest under an executory land

sale contract is security for the debt of unpaid purchase money); *Birdsall v. Cropsey*, 29 Neb. 672, 44 N.W. 857 (1890), *modified* 29 Neb. 679, 45 N.W. 921 (seller of real estate under a land contract has an equitable lien upon the land).

In *Hendrix*, this court stated:

> All the authorities agree that in an executory contract for the sale of real estate the vendor retains the legal title to secure the payment of the unpaid purchase money. In *Church v. Smith*, 39 Wis. 492, the court says: "The vendor of land by an ordinary land contract holds the legal title as security for the unpaid purchase money.["] (*Sparks v. Hess*, 15 Cal., 186.) And in *Graham v. McCampbell*, 33 Am. Dec., 126, the supreme court of Tennessee says: "We are not able to draw any sensible distinction between the cases of a legal title conveyed to secure the payment of a debt and a legal title retained to secure the payment of a debt. In both cases courts of chancery consider the estate only as security for the payment of the debt, upon the discharge of which the debtor is entitled to a conveyance in the one instance and a reconveyance in the other."
>
> . . . And the authorities are harmonious that in an executory contract for the sale of real estate the vendor, upon default made by the vendee, may treat the contract as an ordinary real estate mortgage and foreclose it as such. In *Fitzhugh v. Maxwell*, 34 Mich., 138, the court said: "A contract for the sale of land conveys to the vendee an equitable title, and the only principle upon which the vendor may sue for his money, and at the same time seek security against the land, is the one which recognizes the analogy to a vendor's lien in cases where the legal title has been conveyed; and the vendee's title can only be divested by a sale. The claim of a vendor in a land contract is but an ordinary money debt secured by the contract, and his proceedings to enforce the lien upon the land should be governed by the analogies of proceedings to enforce other equitable liens and be executed by a sale to satisfy the amount due." . . . In *Sparks v. Hess*, 15 Cal., 186, the court said the position of a vendor in an executory contract for the sale of real estate is similar to that of a

party executing a conveyance and taking back a mortgage. He "may sue at law for the balance of the purchase money or file his bill in equity for the specific performance of the contract and take an alternative decree that if the purchaser will not accept a conveyance and pay the purchase money the premises be sold to raise such money and that the vendee pay any deficiency remaining after the application of the proceeds arising upon such sale." 49 Neb. at 372-73, 68 N.W. at 532-33.

Where the owner of real estate enters into a contract of sale, retaining legal title until purchase money is paid, the ownership of the realty passes to and vests in the purchaser, and the interest or estate acquired by the buyer is land, and the rights conferred by the contract upon and vested in the seller are personal property. *Buford v. Dahlke*, 158 Neb. 39, 62 N.W.2d 252 (1954). Cf. *Northwestern State Bank v. Hanks*, 122 Neb. 262, 240 N.W. 281 (1932) (in mortgage transaction, legal title is retained by mortgagor-borrower, and equitable interest of mortgagee-lender is personal property only). That rule has also been applied in risk of loss cases. *Monroe v. Lincoln City Employees Credit Union*, 203 Neb. 702, 279 N.W.2d 866 (1979).

Moreover, where a land contract has an escrow provision stating that the deed will be held in escrow until payment of the purchase price, the grantor of an instrument held in escrow loses control over it so long as the grantee does not default, even though the grantor retains bare legal title in the land as security for payment of the purchase price. *DeBoer v. Oakbrook Home Assn.*, 218 Neb. 813, 359 N.W.2d 768 (1984) (seller loses right to control the property or any incidents of ownership except those which are necessary to protect his security rights); *Beren Corp. v. Spader*, 198 Neb. 677, 255 N.W.2d 247 (1977); *Valentine Oil Co. v. Powers*, 157 Neb. 71, 59 N.W.2d 150 (1953) (grantor loses control over the instrument placed in escrow).

We have also refused to strictly enforce the traditional remedy of forfeiture in the event of a default on a land contract in favor of recognizing the right of a seller to foreclose as if the contract were a mortgage. See, *Ryan v. Kolterman*, 215 Neb. 355, 338 N.W.2d 747 (1983) (before relief under strict forfeiture

may be granted, it must be clear that property is of less value than amount due on contract for its sale at time of trial and that it would not bring surplus over amount due if sale were ordered); *State Securities Co. v. Daringer*, 206 Neb. 427, 293 N.W.2d 102 (1980) (contract for purchase of real estate may be strictly foreclosed where it is clear that property is of less value than contract price and that it would not bring surplus over and above amount due if sale were ordered, and such procedure would not offend justice and equity). See, also, *Heartline Farms, Inc. v. Daly*, 934 F.2d 985 (8th Cir. 1991) (permitting strict foreclosure of vendee's interest in installment land contract would offend equity and justice); *Porter v. Smith*, 240 Neb. 928, 486 N.W.2d 846 (1992); *Jones v. Burr*, 223 Neb. 291, 389 N.W.2d 289 (1986); *Carman v. Gibbs*, 220 Neb. 603, 371 N.W.2d 283 (1985). In addition, we have recognized the right of a seller in an executory land contract to treat the contract in an installment land action like the note given in a mortgage transaction to support an action at law and sue the purchaser for a deficiency judgment. See *Carman v. Gibbs, supra.*

From the foregoing, we conclude that the land contracts in question are to be treated as mortgages.

### (b) Postdefault Documents

That determination makes it necessary that we determine the effect of the documents executed after J.J. & Associates' August 1, 1989, default. Where the holder of a senior mortgage discharges it of record and contemporaneously takes a new mortgage, the holder will not, in the absence of paramount equities, be held to have subordinated his or her security to an intervening lien unless the circumstances of the transaction indicate this to have been the holder's intention, or such intention upon the holder's part is shown by extrinsic evidence. *Larson Cement Stone Co. v. Redlim Realty Co.*, 179 Neb. 134, 137 N.W.2d 241 (1965); *Hadley v. Schow*, 146 Neb. 163, 18 N.W.2d 923 (1945). Ordinarily, it is presumed that where it was essential to one's security against an intervening title, one must have intended to keep alive the mortgage title; this presumption applies although one, through ignorance of such intervening title, may have actually discharged the mortgage and canceled

the notes and intended to extinguish them. *Commercial Fed. S. & L. Assn. v. Grabenstein*, 231 Neb. 647, 437 N.W.2d 775 (1989); *Hadley v. Schow, supra.*

As we said in *Peoples Bank v. Trowbridge*, 123 Neb. 312, 315-16, 242 N.W. 647, 648 (1932), quoting *American Sav. Bank & Trust Co. v. Helgesen*, 67 Wash. 572, 122 P. 26 (1912):

"The cancelation of the old mortgage and the substitution of the new were contemporaneous acts. The manifest intention of all parties interested and participating was not to discharge the lien of the mortgage but to continue it. The purpose was not to create a new incumbrance, but merely to change the form of the old. . . ."

Here, there was no intent on the part of Goos-Venteicher or J.J. & Associates to give up the priority of the liens created by the land contracts. Rather, according to the evidence, the contracts were changed to deeds of trust to put Goos-Venteicher "in a position that was easier and quicker to dispose of in case we had to go to foreclosure at a later date." Indeed, the district court so found, stating: "The logical conclusion is the parties intended the transaction(s) in the fall of 1989 [to] be a substitution for the rights and obligations under the existing land contracts."

In *Troyer v. Mundy*, 60 F.2d 818 (8th Cir. 1932), the father sold land to his son-in-law and took back a purchase-money mortgage for $11,000. When the father died, the son-in-law's wife received $6,800 of the mortgage, and her sister received $3,700. To divide the estate, the sisters released the original $11,000 mortgage and took back two mortgages of equal priority, one for $6,800 and one for $3,700. When a third party offered to advance $3,700 for the wife's sister's mortgage if he could have a first mortgage, the sisters filed releases, and the son-in-law renewed the mortgages, executing a first mortgage to the third party for $3,700 and a second mortgage to his wife for $8,500. The son-in-law subsequently declared bankruptcy, and the trustee in bankruptcy argued that he, the trustee, had priority because the son-in-law's wife was not entitled to the protection of a purchase-money mortgage.

The court of appeals stated:

Being a purchase-money mortgage, given to secure a

particular debt, it remained valid in equity for that purpose, whatever form the debt might assume, if it could be traced. . . . The lien of a purchase-money mortgage having attached, it was not displaced by any change in the form of the security. Defendant has clearly traced her debt and mortgage to the original purchase-money mortgage, and in equity her purchase-money mortgage interest should be sustained. . . . The subsequent dealings with the original mortgage have not changed the inherent nature of the mortgages taken in its place. They are to be regarded as purchase-money mortgages.

*Id.* at 821.

Because this court has uniformly recognized that a seller in a land contract retains the title as security for the unpaid purchase money and has an equitable lien on the land to the extent of the debt, a seller has, for all intents and purposes, a purchase-money mortgage. See, *Hendrix v. Barker*, 49 Neb. 369, 68 N.W. 531 (1896); *Birdsall v. Cropsey*, 29 Neb. 672, 44 N.W. 857 (1890), *modified* 29 Neb. 679, 45 N.W. 921; *Dorsey v. Hall*, 7 Neb. 460 (1878). See, also, *Commerce Savings Lincoln v. Robinson*, 213 Neb. 596, 331 N.W.2d 495 (1983) (a purchase-money mortgage is given for unpaid purchase money on sale of land as part of same transaction as deed, and its funds are actually used to buy land). Under the reasoning in *Troyer*, therefore, Goos-Venteicher's deeds of trust traceable to the original purchase-money mortgage created by the land contracts would maintain the priority of those contracts.

In finding that the October 18 deeds of trust did not have the first priority of the land sale contracts, the district court stated that "the execution and delivery of the warranty deeds was not done contemporaneously with the execution and delivery of the promissory notes and trust deeds." The court reasoned that the

warranty deeds were executed, and presumably delivered, by Goos and Venteicher on September 15, 1989. The promissory notes and trust deeds were not executed and delivered until October 18, 1989. Thusly, for a period of time exceeding 30 days, these lots had no lien other than that possessed by [RTC].

The essential fact to render delivery effective is that the deed

itself has left the control of the grantor, who has reserved no right to recall it, and it has passed to the grantee. *Robinson v. Thompson*, 192 Neb. 428, 222 N.W.2d 123 (1974); *Kellner v. Whaley*, 148 Neb. 259, 27 N.W.2d 183 (1947).

It is essential to the validity of a deed that there be delivery. *Krueger v. Callies*, 190 Neb. 376, 208 N.W.2d 685 (1973); *Moseley v. Zieg*, 180 Neb. 810, 146 N.W.2d 72 (1966), *on reargument* 181 Neb. 691, 150 N.W.2d 736 (1967). The district court presumed delivery of the warranty deeds as of the date of their execution.

The evidence is uncontroverted that the warranty deeds were delivered on the same day that the promissory notes and Goos-Venteicher deeds of trust and deeds of trust acknowledgments were executed. Not only did J.J. & Associates' general partner testify that on October 18, 1989, simultaneously with the receipt of the warranty deeds, he signed the promissory notes, deeds of trust, and deeds of trust acknowledgments, but the parties stipulated that contemporaneously with the execution of the promissory notes, deeds of trust, and deeds of trust acknowledgments by J.J. & Associates, Goos-Venteicher delivered to J.J. & Associates the warranty deeds to both lots.

Where facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question as a matter of law. *Palmtag v. Gartner Constr. Co., ante* p. 405, 513 N.W.2d 495 (1994); *Johnson v. First Nat. Bank & Trust Co.*, 207 Neb. 521, 300 N.W.2d 10 (1980); *Woodsmall v. Marijo, Inc.*, 206 Neb. 405, 293 N.W.2d 378 (1980). Our independent review of the record clearly shows that the warranty deeds were delivered by Goos-Venteicher on October 18, the same date the promissory notes and deeds of trust were executed and delivered by J.J. & Associates.

Moreover, a finding that the warranty deeds were executed and delivered on September 18, prior to the execution and delivery of the notes and deeds of trust, alone would not prevent a holding that a mortgage was created. In *Prout v. Burke*, 51 Neb. 24, 70 N.W. 512 (1897), promissory notes, a mortgage, and a deed were executed on different dates, and no

evidence was presented clearly disclosing the dates of delivery. We reasoned that because the evidence showed that the papers were intended by the parties to be, and were in fact, parts of the same transaction, the mortgage must, in legal effect, be regarded as having been executed and delivered simultaneously with the deed of purchase. Even if a deed conveys title in fee simple, this court looks to the intent and relationship of the parties where it is contended that the conveyance is in actuality a mortgage. See, Neb. Rev. Stat. § 76-251 (Reissue 1990); *Stava v. Stava*, 222 Neb. 343, 383 N.W.2d 765 (1986); *Cizek v. Cizek*, 201 Neb. 4, 266 N.W.2d 68 (1978); *Davison v. Inselman*, 185 Neb. 236, 175 N.W.2d 85 (1970); *Koehn v. Koehn*, 164 Neb. 169, 81 N.W.2d 900 (1957); *Campbell v. Ohio National Life Ins. Co.*, 161 Neb. 653, 74 N.W.2d 546 (1956).

Although J.J. & Associates was given additional time in which to purchase the Goos-Venteicher lots, such "stretching out" of installment payments does not, under the circumstances, result in a loss of priority. See, *Larson Cement Stone Co. v. Redlim Realty Co.*, 179 Neb. 134, 137 N.W.2d 241 (1965) (where, prior to advancement of any funds, renewal mortgage was executed permitting extension of date of first payment, renewal mortgage was paramount and superior to intervening liens for material and labor); *Eurovest Ltd. v. 13290 Biscayne Island Terrace Corp.*, 559 So. 2d 1198 (Fla. App. 1990); *Guleserian v. Fields*, 351 Mass. 238, 218 N.E.2d 397 (1966). Contra *C&S Nat'l Bank of S. C. v. Smith*, 277 S.C. 162, 284 S.E.2d 770 (1981) (extension of senior mortgage results in loss of its priority as against an intervening lienor).

The case cited by the district court, *Rice v. Winters*, 45 Neb. 517, 63 N.W. 830 (1895), in support of its finding that Goos-Venteicher's deeds of trust executed October 18, 1989, were not first liens, is clearly distinguishable. In *Rice*, one party owned real estate on which two parties had mortgages. The plaintiff paid off the first mortgage on the property. Thereafter, the first mortgagee released his mortgage, and the mortgagor-borrower attempted to give the plaintiff the priority of the first mortgage. We said no, holding that the plaintiff was not entitled to be subrogated to the lien held by the first mortgagee, and reasoning that the right of subrogation is never

accorded in equity to one who is a mere volunteer in paying a debt of one person to another, but is accorded to one who must act on compulsion to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt.

The promissory notes executed by J.J. & Associates to RTC state that they were secured by second deeds of trust on the Goos-Venteicher lots. Granting Goos-Venteicher's October 18, 1989, deeds of trust the priority created under their land contracts, RTC is left in the same position it would have been in had the Goos-Venteicher deeds of trust not been executed and the land contracts not been released.

We therefore hold that the Goos-Venteicher liens, evidenced by the promissory notes, deeds of trust, and deeds of trust acknowledgments executed on October 18, 1989, continue the liens first created by the land contracts and constitute first purchase-money mortgages and that the liens thus created have priority over the lien created by the Occidental transaction.

## 2. ACCORD AND SATISFACTION

In the second and last summarized assignment of error, Goos-Venteicher challenges the district court's finding that in any event, the documents executed after J.J. & Associates' default on the payment due August 1, 1989, constituted an accord and satisfaction of the land contracts.

In so ruling, the district court stated that those documents established "as a matter of law an accord and satisfaction of their rights and obligations under the land contract. This is further evidenced by the express statement on the warranty deeds that they were given 'in satisfaction' of the land contracts."

We agree with the statement in *United States v. Aetna Casualty & Surety Co.*, 480 F.2d 1095 (8th Cir. 1973), that an accord and satisfaction is a discharge of an existing indebtedness by the rendering of some performance different from that which was claimed as due and the acceptance of such substituted performance by the claimant in full satisfaction of the claim.

To constitute an accord and satisfaction, there must be (1) a

bona fide dispute between the parties, (2) substitute performance tendered in full satisfaction of the claim, and (3) acceptance of the tendered performance. *Peterson v. Kellner, ante* p. 515, 513 N.W.2d 517 (1994); *Mahler v. Bellis*, 231 Neb. 161, 435 N.W.2d 661 (1989).

It is essential that there be a bona fide dispute between the parties, that the substituted performance be tendered in full satisfaction of the claim, and that the tendered performance be accepted. *Rees v. Huffman*, 222 Neb. 493, 384 N.W.2d 631 (1986); *High-Plains Cooperative Assn. v. Stevens*, 204 Neb. 664, 284 N.W.2d 846 (1979).

In *Cass Constr. Co. v. Brennan*, 222 Neb. 69, 81, 382 N.W.2d 313, 321 (1986), we said:

> A bona fide dispute serves as the necessary consideration underlying the new agreement in an accord and satisfaction. This form of consideration is based on the theory that if the amount due is disputed or unliquidated, the forbearance from suit and the willingness to compromise is in itself valuable consideration, even if an ultimate factual showing may later establish that the claim or defense was invalid in whole or in part. . . .
>
> With regard to good faith in an accord and satisfaction, one court has defined it as follows: "An indispensible element contributing to the establishment of this defense consists in an actual and substantial difference of opinion. One must assert the validity of his claim and the other must in good faith deny all or part of it. His denial cannot be fabricated for use as a pretext to evade the discharge of an obligation. Disclaimer must be *bona fide* and based upon real faith that the demand is not meritorious."

There is no evidence that there ever was any dispute between Goos-Venteicher and J.J. & Associates in regard to the amount due on the subject properties. In point of fact, the principal amounts of the later-executed promissory notes were for the same amounts as the balances of the purchase price due under the land contracts. Goos testified that the words "in satisfaction," as written on the warranty deeds, did not mean that the purchase price had been paid in full, but, rather, that

the deeds of trust were a substitution for the land contracts and that the purchase price remained due.

The case upon which RTC relies, *Kearney State Bank & Trust v. Scheer-Williams*, 229 Neb. 705, 428 N.W.2d 888 (1988), is distinguishable from the case now before us. In *Kearney State Bank & Trust*, the bank had taken a security interest in the inventory of the defendants' store in exchange for a promissory note. The defendants defaulted, and the bank filed an action in replevin to secure the collateral. Thereafter, the parties entered into a written agreement under which the bank agreed to forgo part of the defendants' indebtedness in return for the defendants' surrendering possession of all their collateral to the bank for sale, with the proceeds to be applied to the remaining indebtedness. In the agreement, the defendants waived all rights to notification of the sale of the collateral. When the sale failed to produce enough revenue to satisfy the remaining indebtedness, the bank filed suit for the balance. The defendants argued that the failure of the bank to give notice of the sale as required under statute precluded the bank from obtaining a deficiency judgment. Considering that the agreement forgave a great amount of indebtedness, released a personal guaranty, and limited the amount of a deficiency judgment, we held that it was not unreasonable to conclude that the defendants had waived notice of the impending sale and, more significantly, that the agreement constituted a valid accord and satisfaction. However, unlike the situation in *Kearney State Bank & Trust*, here the amount of the indebtedness was not reduced in the October 18 transaction. Additionally, the trial court in *Kearney State Bank & Trust* appeared to find that a bona fide dispute existed between the parties.

RTC urges that *Kearney State Bank & Trust* is applicable because J.J. & Associates tendered a deed of trust and a promissory note for the balance owing on the land contracts in return for Goos-Venteicher not exercising their right under the land contracts. The testimony of Goos and J.J. & Associates' general partner precludes such a finding. The only testimony given regarding the reason for the change to the deed of trust came from Goos, who stated, as first noted in subpart (1)(b)

above, that the deeds of trust were utilized to make it easier to foreclose on the property should J.J. & Associates default on its notes.

Nor is the case *Waters v. Lanier*, 116 Ga. App. 471, 157 S.E.2d 796 (1967), on point. In *Waters*, the Georgia Court of Appeals found the creditor entered an accord and satisfaction by accepting a warranty deed given "in satisfaction" of a promissory note held by the creditor, collection of which had been barred by bankruptcy.

The key element of accord and satisfaction is the intent of the parties, which, although as a general rule presents a question of fact, becomes a question of law when the evidence creates no conflict as to intent. *Mahler v. Bellis*, 231 Neb. 161, 435 N.W.2d 661 (1989).

There is simply no evidence of a bona fide dispute or intent on the part of Goos-Venteicher and J.J. & Associates to extinguish the prior indebtedness owing under the land contracts and to accept the executed deeds of trust as an accord and satisfaction. Absent the intent of the parties to enter into an accord and satisfaction of the land contracts, the words "in satisfaction" on the warranty deed do not constitute an accord and satisfaction.

## V. ANALYSIS OF NOVATION CLAIM

RTC argues that if there was no accord and satisfaction, Goos-Venteicher's intention to replace the remedies applicable to land contracts with those available under deeds of trust makes the October 18 transaction a novation.

Two conditions must be met in order for an agreement to constitute a novation: (1) The agreement must completely extinguish the existing liability, and (2) a new liability must be substituted in its place. See, *Wheat Belt Pub. Power Dist. v. Batterman*, 234 Neb. 589, 452 N.W.2d 49 (1990); *Thomas v. George*, 105 Neb. 44, 178 N.W. 922 (1920), *modified* 105 Neb. 51, 181 N.W. 646 (1921). A novation will never be presumed. The complete discharge of the original debtor must be shown to have been expressly agreed upon or must be necessarily and clearly inferred from the express terms of the agreement. *Id.*

As we have determined previously, see part IV(1)(b) above,

the liens arising by virtue of the execution of the installment land contracts were never extinguished. Thus, it follows without the need of further explication that the October 18 transaction cannot constitute a novation.

## VI. JUDGMENT

Accordingly, the district court's decree of foreclosure is affirmed but modified so as to give priority to Goos-Venteicher's liens over that of RTC.

AFFIRMED AS MODIFIED.